# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

DEVCON INTERNATIONAL
CORPORATION, V.I. CEMENT &
BUILDING PRODUCTS, INC., d/b/a
MARK 21 INDUSTRIES, INC., d/b/a
CONTROLLED CONCRETE
PRODUCTS, INC., d/b/a
SPRINGFIELD CRUSHER,

      Appellants,

v.

RELIANCE INSURANCE COMPANY
and THE VIRGIN ISLANDS
GUARANTEE ASSOCIATION,

      Appellees.

USCA No.: 07-4602 & 08-1996

D.C. No.: 2001-201

---

## ON APPEAL FROM A FINAL
## ORDER OF THE DISTRICT COURT OF
## THE VIRGIN ISLANDS, ST. CROIX DIVISION

---

## APPELLANTS' BRIEF

MAILING ADDRESS:
JACK J. AIELLO
GUNSTER, YOAKLEY & STEWART, P.A.
777 S. Flagler Drive
Suite 500 East
West Palm Beach, FL  33401
561-650-0716
Attorneys for Appellants

*Devcon International Corp., et al. v. Reliance Insurance Co., et al.*
**Case No.: 07-4602 & 08-1996**
**Page C-1 of 1**

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

The following persons and entities have an interest in the outcome of this appeal:

Jack J. Aiello, Esq., Appellate Counsel for Appellants

Gunster, Yoakley & Stewart, P.A., Counsel for Appellants

Robert H. Friedman, Esq., Trial Counsel for Appellants

Maria T. Hodge, Esq., Trial Counsel for Appellants

Denise Francois, Esq., Trial Counsel for Appellants

James L. Hymes, III, Esq., Trial Counsel for Appellants

Douglas L. Capdeville, Esq., Counsel for Appellee, Reliance Ins. Co.

Richard H. Hunter, Esq., Counsel for Appellee, VIIGA

Honorable Curtis V. Gomez, District Court Judge

Devcon International Corporation, Plaintiff/Appellant
V.I. Cement & Building Products, Inc. d/b/ Mark 21 Industries, Inc. d/b/a
Controlled Concrete Products, Inc., d/b/a Springfield Crusher, Plaintiff/Appellant

Reliance Insurance Company, Defendant/Appellee

The Virgin Islands Guarantee Association, Defendant/Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Appellants believe that oral argument would be of assistance to this Court in resolving this matter because the insurance coverage claim at issue is part of a body of law that is still developing in the decisions of the federal courts.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ........................................................ C-1 OF 1

STATEMENT REGARDING ORAL ARGUMENT ............................................. I

TABLE OF CONTENTS ................................................................. II

CERTIFICATE OF SERVICE ........................................................... IV

TABLE OF CITATIONS ................................................................ V

STATEMENT OF JURISDICTION ..................................................... IX

PREFACE ............................................................................. X

STATEMENT OF THE ISSUES .......................................................... 1

      I.     WHETHER THE DISTRICT COURT ERRED IN
             DETERMINING THAT THE POLLUTION
             EXCLUSION PRECLUDED DEFENSE AND
             INDEMNITY COVERAGE FOR THE YELLOW
             CEDAR ACTION. (App. pp. 8-13, 25-29) ................................ 1

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................. 1

STATEMENT OF THE CASE ............................................................ 1

    A.    Course of Proceedings ........................................................ 1

    B.    Statement of the Facts ........................................................ 5

             (1)    Claims Asserted in the Yellow Cedar Action
                   Complaint ............................................................ 5

             (2)    Reliance's Refusal to Defend Devcon ................. 8

             (3)    Relevant Policy Provisions .................................... 8

    C.    Standard of Review .......................................................... 18

SUMMARY OF THE ARGUMENT ..................................................... 19

ARGUMENT ........................................................................... 21

      I.     THE DISTRICT COURT ERRED IN DETERMINING
             THAT THE POLLUTION EXCLUSION PRECLUDED
             DEFENSE AND INDEMNITY COVERAGE FOR THE
             YELLOW CEDAR ACTION ................................................ 21

A.    The Duty to Defend is Broader than the Duty to Indemnify ................................................................. 21

B.    Policy Exclusions are Construed Against the Insurer and in Favor of the Insured .............................. 23

C.    The Pollution Exclusion is Ambiguous ........................ 25

    (1)    Ambiguity Must be Read Against Reliance ....... 25

    (2)    Under Virgin Islands Law, the Pollution Exclusion in the Policy is Ambiguous as Applied to Negligence Claims Arising Out of Normal Business Activities ............................ 26

    (3)    The District Court Erred in Its Application of Existing Virgin Islands Law .......................... 30

    (4)    The District Court Erred in Distinguishing *Mahogany Run* .................................................. 31

    (5)    The Split of Authority Among Federal Circuit Courts and State Supreme Courts Demonstrates the Inherent Ambiguity of the Pollution Exclusion ........................................... 33

    (6)    Insurance Industry Regulatory Statements Confirm that the Pollution Exclusion Should Not be Read Literally ........................................ 35

D.    The District Court Erred in Refusing to Apply the Reasonable Expectations Test ...................................... 37

E.    Even if Devcon Did Not Have a Reasonable Expectation of Coverage for Certain Yellow Cedar Action Liabilities, the Pollution Exclusion Does Not Eliminate All Defense and Indemnity Coverage Under the Policy ........................................... 42

    (1)    Devcon Purchased Work Site Pollution Coverage ............................................................ 42

    (2)    Devcon's Business Auto Coverage Covers Liability Arising Out of Engine Emissions ........ 44

    (3)    The Yellow Cedar Action Alleges "Personal Injury" Claims That are Not Subject to the Pollution Exclusion ........................................... 46

(4)    Coverage is Available for Allegations
              Related to Excessive Noise ................................ 48

CONCLUSION ..................................................................................... 50

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF THIRD CIRCUIT MEMBERSHIP

CERTIFICATE OF IDENTICAL BRIEF AND VIRUS CHECK

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

## FEDERAL CASES

*Amerada Hess Corp. v. Zurich ins. Co.*,
  29 Fed. Appx. 800 (3d Cir. 2002).......... 20, 24, 25, 26, 27, 28, 29, 30, 31, 37, 40, 47

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...................................................................................19

*Apana v. TIG Insurance Co.*,
  574 F.3d 679 (9th Cir. 2009) ...............................................................33, 34

*Berne v. Aetna Insurance Co*,
  604 F. Supp. 958 (D.V.I.), aff'd, 782 F.2d  1026 (3d Cir.1985)..............................23

*Buntin v. Continental Insurance Co.*,
  583 F.2d 1201 (3d 1978).....................................................................24, 25

*C.H. Heist Caribe Corp. v. American Home Assurance Co.*,
  640 F.2d 479 (3d Cir. 1981) ...............................................................22, 23

*Cay Divers, Inc. v. Raven*,
  812 F.2d 866 (3rd Cir. 1987) .....................................................................22

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..................................................................................19

*Central Green Co. v. U.S.*,
  531 U.S. 425 (2001)..................................................................................42

*Coakley Bay Condominium Association v. Continental Insurance Co.*,
  770 F. Supp.1046 (D.V.I.l99l) ...........................................................23, 24

*Evanston Insurance Co. v. Treister.*,
  794 F. Supp. 560 (D.V.I.l992) ......................................................24, 25, 26

*Frog, Switch & Manufacturing Co. v. Travelers Insurance Co.*,
  193 F.3d 742 (3d Cir. 1999) .............................................................22, 50

*Hersch v. Allen Products Co.*,
    789 F.2d 230 (3rd Cir. 1986) ................................................................19

*Hess Oil V.I. Corp. v. Firemen's Fund Insurance Co.*,
    626 F. Supp. 882 (D.V.I. 1986) ...........................................................22

*Medical Protective Co. v. Watkins*,
    198 F.3d 100 (3d Cir. 1999) .................................................................39

*New Castle County, DE*,
    243 F.3d at 749 (3rd Cir. 2001) ...........................................................46

*New Castle County v. National Union Fire Insurance Co. of Pittsburgh*,
    174 F.3d 338 (3d Cir. 1999) ................................................28, 29, 34, 47

*Pipefitters Welfare Education Fund v. Westchester Fire Insurance Co.*,
    972 F.2d 1037 (7th Cir. 1992) ..............................................................35

*Sphere Drake Insurance PLC v. Gainsco County Mutual Insurance Co.*,
    273 F.3d 1100, 2001 WL. 1071530 (5th Cir. 2001) ..........................44, 45

*Titan Holdings Syndicate, Inc*,
    898 F.2d at 268 (1st Cir. 1990) .........................................................48, 49

*In re Tutu Water Wells Contamination Litigation*,
    78 F. Supp. 2d 456 (D.V.I. 1999) .................................................24, 25, 47

*UPMC Health System v. Metropolitan Life Insurance Co.*,
    391 F.3d 497 (3d Cir. 2004) .................................................................39

*Vlastos v. Sumitomo Marine & Fire Insurance Co. (Europe) Ltd.*,
    707 F.2d 775 (3d Cir.1983) .................................................................25

*West American Insurance Co. v. Park*,
    933 F.2d 1236 (3d Cir. 1991) ..............................................................39

## STATE CASES

*Bank of the West v. Superior Court*,
    2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538 (Cal. 1992)...................................41

*Belt Painting Corp. v. TIG Insurance Co.*,
   100 N.Y.2d 377, 795 N.E.2d 15 (N.Y. 2003)..........................................27

*Collister v. Nationwide Life Insurance Co.*,
   479 Pa. 579, 388 A.2d 1346 (Penn. 1978).............................................39

*General Star Indemnity Co. v. V.I. Port Authority*,
   48 V.I. 696 (D.V.I. 2007) ....................................................20, 26, 30, 31

*Konell Construction and Demolition Corp. v. Valiant Insurance Co.,*
   2006 WL. 1360956 (D. Or. May 15, 2006) .............................................43

*Mahogany Run Condominium Associate Inc. v. Certain Underwriters at
   Lloyds*,
   2004 WL. 1987236 (D. V.I. Aug. 30, 2004) .................20, 25, 26, 28, 29, 31, 32, 33

*Molton, Allen & Williams, Inc. v. St. Paul Fire and Marine Insurance*,
   347 So. 2d 95 (Ala. 1977)....................................................................41

*Nav-Its, Inc. v. Selective Insurance Co.*,
   869 A.2d 929 (N.J. 2005) ....................................................................35

*Tsakopolous v. American Manufacturers Mutual Insurance Co.*,
   2003 WL. 22595248 (E.D. Cal 2000).....................................................41

## FEDERAL STATUTES

Fed. R. Civ. P. 56(c).............................................................................19

## STATE STATUTES

V.I. Code Ann. tit. 1 § 4 (2005)...............................................................37

V.I. Code Ann. Tit. 22, §237(a).................................................................2

## MISCELLANEOUS

*Couch on Insurance* 2d § 22:11 (2007) ........................................................................38

*Restatement (Second) of Contracts* § 206.................................................................25

*Restatement (Second) of Contracts* § 211 (1979) ........................................................38

*Robert Keeton, Insurance Law Rights at Variance with Policy Provisions,*
    83 Harv. L. Rev. 961 (1970)......................................................................................36

## <u>STATEMENT OF JURISDICTION</u>

This Court has jurisdiction of this appeal because it is an appeal from a final

order under 28 U. S. C. § 1291.

## __PREFACE__

Throughout Appellants' brief, Devcon International Corporation and V.I. Cement and Building Products, Inc. ("V.I. Cement") shall be referred to collectively as "Devcon".

Appellees Reliance Insurance Company and the Virgin Islands Insurance Guaranty Association ("VIIGA") shall be referred to collectively as "Reliance".

Witnesses and other parties shall be referred to as set forth in the Statement of the Case.

Citations to the Record on Appeal shall be to the Appendix or to the remaining Record as follows:

      Appendix: (App. p. __), including Appendix page number.

      Record: (R __:__), including docket entry number and page number.

## STATEMENT OF THE ISSUES

I.    WHETHER THE DISTRICT COURT ERRED IN DETERMINING THAT THE POLLUTION EXCLUSION PRECLUDED DEFENSE AND INDEMNITY COVERAGE FOR THE YELLOW CEDAR ACTION. (App. pp. 8-13, 25-29)

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case was previously before this Court in an appeal brought by Devcon, to review an order of the trial court staying the case indefinitely.  (R31; R23)  That case, USCA No. 02-4474, was later dismissed by stipulation of the parties.  (R36) Devcon is not aware of any other case or proceeding that is in any way related, completed, pending or about to be presented before this Court or any other Court or agency, state or federal.

## STATEMENT OF THE CASE

### A.    Course of Proceedings

This action originated in the District Court of the Virgin Islands with the filing of Devcon's Complaint against Reliance Insurance Company.  (Complaint, App. p. 52)   The Complaint was filed on October 25, 2001 and sought a declaratory judgment to resolve an insurance coverage dispute between Reliance Insurance Company and Devcon over a lawsuit filed against V.I. Cement by hundreds of residents of Estate Yellow Cedar, St. Croix.  (App. pp. 52-53)  The Yellow Cedar residents sought damages for bodily injury, property damage, and

1

other injuries allegedly caused by dust, noise, automobile emissions, and other nuisances and activities arising from V.I. Cement's construction activities at the Henry E. Rohlsen Airport in St. Croix.  (App. p. 55)   The case brought by the Yellow Cedar residents was styled *Mariepaul Antoine, et al. v. Virgin Islands VIPA and Virgin Islands Cement and Building Products, Inc.*, in the United States District Court for the District of St. Croix, Case No. 01-0063 ("Yellow Cedar Action"). (Id.)

Reliance refused to defend Devcon against the Yellow Cedar Action on the basis that the pollution exclusion in its policies precluded any possibility of coverage for the claims.  (Statement of Undisputed Facts, App. p. 349)  Devcon's Complaint sought a declaratory judgment requiring Reliance to provide a defense and to indemnify any judgment or settlement of the Yellow Cedar Action.  (App. pp. 56-58)

Reliance was adjudicated to be insolvent by an October 3, 2001 Order of Liquidation entered by the Commonwealth Court of Pennsylvania.  (First Amended Complaint, App. 69, ¶ 21)  Based upon the Order of Insolvency, and pursuant to V.I. Code Ann. Tit. 22, §237(a), Appellee VIIGA assumed all of the rights, duties, and obligations of Reliance Insurance Company. (First Amended Complaint, App. p. 69, ¶ 22; Answer, App. p. 80, ¶ 22)

After Reliance Insurance Company was ordered into insolvency, Devcon

2

added VIIGA as a defendant to the Complaint, and the District Court of the Virgin Islands entered an order staying the proceedings indefinitely. (First Amended Complaint, App. p. 64; Order Granting Indefinite Stay, May 17, 2002, R23) After Devcon's Motion for Reconsideration of that order was denied, Devcon appealed to this Court. Soon thereafter, VIIGA agreed to defend Devcon in the Yellow Cedar Action, and the appeal was dismissed by stipulation of the parties on September 22, 2004. (Order of Dismissal, R36) On October 14, 2005, after VIIGA withdrew from its defense of Devcon, the trial court partially vacated its May 17, 2002 stay to allow Devcon and VIIGA to continue litigating the coverage dispute. (App. p. 90)

Devcon and Reliance both filed Motions for Summary Judgment in early 2007. (Plaintiffs' Motion for Summary Judgment and supporting documents, App. pp. 178, 326, 330, 347; VIIGA's Motion for Summary Judgment and supporting documents, App. pp. 180, 183, 314, 318, 324, 326) Devcon's position was that the Reliance Insurance Company policies covered damages alleged by the Yellow Cedar residents as a result of V.I. Cement's construction activities at the airport. (App. pp. 330-331) Reliance's position was that there was no coverage based upon the policies' pollution exclusion. (App. pp. 180-181)

After the parties responded to the cross-motions for Summary Judgment, the District Court entered its Memorandum and Opinion ("Opinion") granting

Reliance's Motion for Summary Judgment and denying Devcon's Motion for Summary Judgment.  (Memorandum and Opinion, App. p. 1)  The District Court determined that the pollution exclusion was unambiguous and barred indemnity coverage for any and all of Devcon's liabilities arising from the Yellow Cedar Action.  (Memorandum and Opinion, App. pp. 10-13)  Thereafter, Devcon filed a Motion for Reconsideration.  (App. p. 603)  The District Court denied the Motion for Reconsideration by further memorandum opinion ("Reconsideration Opinion"). (Memorandum and Opinion Denying Plaintiff's Motion for Reconsideration, App. p. 21)  In its Reconsideration Opinion, the District Court reiterated that it found no ambiguity in the language of the pollution exclusion and further determined that there was no need to consider Devcon's reasonable expectations of coverage. (Memorandum Opinion, App. p. 28)  The District Court entered its Order of Denial on November 9, 2007.  (App. p. 31)

After the entry of judgment, Reliance moved to certify the judgment as final, in light of the continued stay with respect to the insolvency of Reliance Insurance Company.  (App. p. 657)  After response by Devcon in opposition, the trial court entered its Order Granting Defendant's Motion to Certify the Final Judgment. (App. pp. 670, 33)

After the entry of the judgment, Reliance filed its Motion for Attorneys' Fees, which was granted by Memorandum Opinion on January 2, 2008.  (App. pp.

4

627, 651, 664, 676, 42)

After initially filing a notice of appeal based upon the rulings with respect to summary judgment, Devcon filed an Amended Notice of Appeal to address also the trial court's award of attorneys' fees. (Notice of Appeal, App. p. 661; Amended Notice of Appeal, App. p. 49) The Notices were treated as separate appeals, and this Court consolidated the two cases for all purposes by Order of April 7, 2008.

### B.    <u>Statement of the Facts</u>

Devcon International Corporation is the parent company of V.I. Cement. In September, 1999, V.I. Cement entered into a contract with the Virgin Islands Port Authority ("VIPA") to act as the general contractor on a runway extension construction project (the "Project") at the Henry E. Rohlsen Airport on St. Croix. (App. p. 22) V.I. Cement began its work on the Project in October, 1999 (App. p. 22) The work included significant site preparation work – the movement of dirt – for the extension of the runway. (App. p. 390)

In late 1999, residents in the adjacent Yellow Cedar neighborhood began to complain about excessive dust, noise, and automobile emissions from the Project. (App. p. 22) In April, 2001, the residents filed the Yellow Cedar Action against V.I. Cement and VIPA. (App. p. 403)

### (1)    Claims Asserted in the Yellow Cedar Action Complaint

Plaintiffs in the Yellow Cedar Action asserted, in relevant part, the following claims in their Fourth Amended Complaint, which was the operative complaint at the time of the summary judgment motions:

Count I – Taking.  VIPA's actions have effectively resulted in and unauthorized taking of Plaintiffs' property without any or not sufficient compensation and without instituting eminent domain proceedings.

Count II – Nuisance.  The excessive dust, noise, and engine emissions caused by the construction activities associated with the runway expansion caused a nuisance, which interfered with the plaintiffs' quiet enjoyment of their property, and caused physical, medical and psychological injuries, including fear of a serious illness, medical expenses, the need for medical monitoring, loss of income, loss of capacity to earn income, mental anguish, severe emotional distress, pain and suffering and loss of enjoyment of life all of which is expected to continue into the foreseeable future.

Count III – Breach of DPNR Agreement.  Defendants failed to perform the actions required by the DPNR Order and the Agreement by not: completing the runway extension timely; implementing Best Industry Practices to reduce dust; submitting a detailed dust control plan and for dust mitigation; cleaning Plaintiffs' cisterns; monitoring dust causing damages to Plaintiffs.

6

Count IV – Trespass.  Defendants' construction activities intentionally caused airborne pollutants, dust and other particles to invade and enter Plaintiffs' property and intentionally failed to remove or otherwise remedy their unlawful invasions and emissions.

Count V – Dangerous Acts.  The unlawful emission of pollutants, dust and particles is, and was, an abnormally dangerous activity which caused or contributed to the pollution of the ambient air, which Plaintiffs were required to breathe, injured and will continue to injure Plaintiffs' health and well-being of their children and families and caused property damage, for all of which Defendants are strictly liable.

Count VI – Negligence.  Defendants negligently continued to cause airborne pollutants, dust and other particles to invade and enter the property of Plaintiffs, and recklessly or negligently failed to remove or otherwise remedy their unlawful invasion and emissions.

Count IX – Intentional/Negligent Infliction of Emotional Distress. Defendants V.I. Cement and VIPA acts are extreme and outrageous so as to constitute intentional or negligent infliction of emotional distress resulting in the damages alleged.

Count X – Punitive Damages.  The actions of Defendants complained of

7

herein were and are so callous and one with such reckless disregard to the rights and privileges of the Plaintiffs so as to entitle them to an award of punitive damages.

Plaintiffs in the Yellow Cedar Action sought compensatory damages plus costs, reasonable attorneys' and expert witness fees and punitive damages against VIPA and V.I. Cement.  Plaintiffs also sought an injunction from any further use of the runway and compensation for properties and improvements, and such other and further relief as the Court deemed fair and proper.  (App. pp. 773-800)

### (2)    Reliance's Refusal to Defend Devcon

Devcon and VIPA (an additional insured on the Reliance Insurance Company policies) sought defense and indemnification coverage from Reliance under two comprehensive general liability insurance policies Devcon purchased from Reliance to protect itself and VIPA against liabilities related to the Project. (App. p. 23)  Reliance initially refused to defend V.I. Cement and VIPA.  (App. p. 384)  It subsequently agreed to defend after Devcon filed suit.  (App. p. 485) Approximately a year after it agreed to defend, Reliance withdrew its defense, and Devcon's umbrella insurer, Zurich American Insurance Company, agreed to undertake V.I. Cement's defense.

### (3)    Relevant Policy Provisions

Reliance Insurance Company policy number VQ 8484811 covered the

period April 1, 1999 to April 1, 2000.  (App. p. 353)  Reliance Insurance Company

policy number QV 8484811 was renewed for the period April 1, 2000 to April 1,

2001.  (App. p. 388)  The two insurance policies are substantively identical.  Both

policies provided $1 million in coverage per occurrence and $2 million in coverage

in the aggregate on a primary basis.  (App. p. 388)  Devcon paid Reliance

premiums of more than $300,000 per year for this coverage.  (App. p. 353)  The

two policies are referred to herein collectively as "the Policy".

Section I of the Policy provides, in relevant part:

## COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1.    Insuring Agreement

We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. This insurance applies only to bodily injury and property damage which occurs during the policy period. The bodily injury or property damage must be caused by an occurrence. The occurrence must take place in the coverage territory. We will have the right and duty to defend any suit to which this insurance applies, seeking those damages…

(App. p. 355)

The Policy contains the following pollution exclusion endorsement

applicably to Coverage A only:

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

9

Exclusion f. under paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages) is replaced by the following:

This insurance does not apply to:

f.(1)  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2)    Any loss, cost or expense arising out of any:

(a)    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of  pollutants; or

(b)    Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

**Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

(App. p. 371)

Further, Coverage B of the Policy provides the following coverages:

### COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

### I. Insuring Agreement

a.    We will pay those sums to which this insurance applies, that the insured becomes legally obligated to pay as damages because of personal injury or advertising injury. We will have the right and duty to defend any suit to which this insurance applies, seeking those damages; but:

\*          \*          \*

10

       b.      This coverage applies to personal injury only if caused by an offense:

          (1)    committed in the coverage territory during the policy period; and

          (2)    arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

                                *            *           *

**2.**    **Exclusions**

This coverage does not apply to:

    a.      personal injury or advertising injury:

                                *            *           *

          (5)    arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration; release or escape of pollutants:

              (a)    at or from any premises, site or location which are or were at any time your premises, or were at any time loaned to any insured.

              (b)    at or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

              (c)    which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

              (d)    at or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations;

(i)    if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii)    if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any respond to, or assess the affects of pollutants.

Subparagraphs (a) and (d)(i) do not apply to personal injury or advertising injury arising out of heat, smoke or fumes from a hostile fire.

(6)    any loss, cost or expense arising out of any:

(a)    request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b)    claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of pollutants.

(App. pp. 358-359)

Further, the Policy contains the following definitions in Section V – Definitions:

**Personal Injury –** injury other than bodily injury, arising out of one or more of the following offenses:

3.    wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of:
a.    a room;
b.    a dwelling; or
c.    a premises;

that a person occupies by or on behalf of its owner, landlord or lessor;

12

**Pollutants** - any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

(App. p. 588)

In addition, the Policy contains an endorsement which provides limited work site pollution coverage as follows:

## LIMITED POLLUTION COVERAGE FORM - WORK SITES

*            *            *

## SECTION I – COVERAGE

### 1. Insuring Agreement

a.    Subject to the applicable policy limits, we will pay those sums that the insured becomes legally obligated to pay as:

(1)    damages as a result of bodily injury or property damage; or

(2)    covered clean-up costs incurred as a result of environmental damage; to which this insurance applies.

b.    This insurance applies:

(1)    only to bodily injury, property damage or environmental damage arising out of a pollution incident at a work site located in the coverage territory; and

(2)    only if the emission, discharge, release, or escape of pollutants from the container or other place of enclosure from which the initial emission, discharge, release, or escape occurred ends completely within 72 hours of the commencement of the pollution incident: and

(3)    only if both the pollution incident and the initial commencement of the bodily injury, property damage, or

13

environmental damage resulting from that pollution incident occur during the policy period.

c.    We will have the right and duty to defend any suit seeking those damages or covered clean-up costs to which this insurance applies. We may investigate any alleged pollution incident and settle any claim or suit at our discretion. Our duty to defend ends when we have used up the applicable limit of insurance in the payment of such amounts as are included in the ultimate net loss.

(App. p. 372)

The Policy also contains the following provisions in its Business Auto Coverage Form:

**SECOND II – LIABILITY COVERAGE**

**A. COVERAGE**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos".  However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense"…

(App. p. 957)

The Business Auto coverage part contains the following pollution exclusion:

This insurance does not apply to any of the following:

11. POLLUTION

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants"

    a.    that are, or that are contained in any property that is:

        (1)    being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

        (2)    otherwise in the course of transit by or on behalf of the "insured"; or

        (3)    being stored, disposed of, treated or processed in or upon the covered "auto"

    b.    before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

    c.    after the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto'" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

        (1)    the "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

        (2)    the "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    (1)    the "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    (2)    the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

(App. p. 960)

The Business Auto Coverage Part contains the following definitions:

"Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include "mobile equipment".

"Covered pollution cost or expense" means any cost or expense arising out of:

1.    Any request, demand or order; or

2.    Any claim or "suit" by or on behalf of a governmental authority demanding that the "insured" or others test for, monitor, clean up, remove, contain, treat detoxify or neutralize, or in any way respond to or assess the effects of the "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a.    that are, or that are contained in any Property that is:

    (1)    being transported or towed by, handled, or handled for movement into, onto or from the covered "auto';

    (2)    otherwise in the course of transit by or on behalf of the "insured";

    (3)    being stored, disposed of, treated or processed in or upon the covered "auto"; or

b.    before the "pollutants" or any property in which the "pollutants" contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

    c.     after the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

    (1)    the "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    (2)    the "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an insured with respect to "pollutants" not in or upon a covered "auto" if:

    (1)    The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    (2)    The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

"Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    1.    Bulldozers, farm machinery, forklifts arid other vehicles designed for use principally off public roads;

    2.    Vehicles maintained for use solely on or next to premises you own or rent;

    3.    Vehicles that travel on crawler treads;

    4.    Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        a.    power cranes, shovels, loaders, diggers or drills; or

        b.    road construction or resurfacing equipment such as graders, scrapers or rollers.

WPB 1053881.5

5.    Vehicles not described in paragraphs 1, 2, 3, or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting arid well servicing equipment; or

    b.    Cherry pickers and similar devices used to raise or lower workers.

6.    Vehicles not described in paragraphs 1, 2, 3, or 4 above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    a.    Equipment designed primarily for:

        (1)    snow removal;

        (2)    road maintenance, but not construction or resurfacing; or

        (3)    street cleaning;

    b.    Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned, or reclaimed.

(App. pp. 966-968)

The parties do not dispute that the Policy was in effect at all material times and that the types of harm alleged and the geographical requirements were met for coverage.  (App. p. 9, 366-369)

## C.    **Standard of Review**

This Court reviews a grant of summary judgment *de novo*, applying the

18

same standard as was to be applied at the District Court.  *Hersch v. Allen Products Co.*, 789 F. 2d 230, 232 (3rd Cir. 1986).  The proper standard is that summary judgment is appropriate where "there is no genuine issue as to any material fact and… the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersch*, *supra*; *see Celotex Corp. v. Catrett*, 477 U. S. 317, 322 (1986) (internal citations omitted)  In reviewing the evidence offered, the Courts must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 255 (1986) (internal citations omitted).

## SUMMARY OF THE ARGUMENT

The District Court erred in concluding that the pollution exclusion precludes any possibility of coverage under the Policy for the Yellow Cedar Action.  The District Court's first error was to conflate the concepts of the duty to defend and duty to indemnify.  The court focused its overly-simplistic analysis on allegations in the Yellow Cedar Action complaint regarding excessive dust, but in doing so failed to recognize the possibility that one allegation among the myriad of other allegations in the complaint could potentially result in covered liability.  For purposes of the duty to defend analysis, even if the District Court believed that no set of facts could develop to bring the dust claims within coverage, it was error for it to ignore the entirety of the non-dust claims and to apply the pollution exclusion

to coverage parts to which the exclusion has limited or no applicability.

The District Court's analysis of the applicability of the pollution exclusion to the dust claims was flawed. The District Court followed with sparse analysis of its previous decision in *General Star*, which involved the same airport extension project and the same pollution exclusion language. But the *General Star* decision was itself flawed because it was based on an erroneous reading of *Amerada Hess*. The District Court also distinguished incorrectly the *Mahogany Run* decision by citing to the wrong policy language. In sum, the only existing Virgin Islands caselaw to support the District Court's conclusion is its own flawed *General Star* case, and the District Court erred in failing to follow *Amerada Hess* and *Mahogany Run*.

The District Court also failed to properly consider cases from other jurisdictions that have found the pollution exclusion to be ambiguous as applied to liability other than that arising from traditional environmental pollution claims. This split of authority -- with a slim majority supporting Devcon's view -- is a strong indication of the pollution exclusion's essential ambiguity.

The District Court's literal interpretation of the pollution exclusion ignored the nonsensical results that can be reached by failing to read the exclusion in the proper historical and contractual context. By interpreting the plain words in a vacuum, the court failed to recognize the purpose behind the exclusion and the

20

policyholder's reasonable expectations as to the exclusion's applicability.

Because the court found the plain words of the exclusion to be unambiguous, it found the reasonable expectations analysis to be inapplicable. Although some jurisdictions take this view, this is not the Virgin Islands Restatement view of the reasonable expectations test. The Restatement reasonable expectations test is the purest form of the analysis initially developed by Professor Keeton, and is the most favorable to policyholders. Under the Restatement test, the court should have upheld Devcon's reasonable expectations of coverage even if those expectations were contrary to the explicit terms of the Policy. Had the District Court applied a reasonable expectations analysis, it would have found that it was objectively reasonable for Devcon to believe that the pollution exclusion had no applicability to liability it incurred as a result of the negligent performance of its construction activities.

## **ARGUMENT**

## I. **THE DISTRICT COURT ERRED IN DETERMINING THAT THE POLLUTION EXCLUSION PRECLUDED DEFENSE AND INDEMNITY COVERAGE FOR THE YELLOW CEDAR ACTION**

### A. **The Duty to Defend is Broader than the Duty to Indemnify**

The District Court determined that the pollution exclusion completely relieved Reliance from any duty to defend or indemnify Devcon. Although the District Court did not distinguish between the duty to defend and the duty to indemnify, the distinction is important. Reliance had a duty to defend Devcon if

21

any allegation in the Yellow Cedar complaint "may potentially be covered by the policy." *Hess Oil V.I. Corp. v. Firemen's Fund Ins. Co.*, 626 F. Supp. 882, 885 (D.V.I. 1986); *see also C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 483 (3d Cir. 1981) (holding that an insurer must defend "if the allegations of the complaint 'state on their face a claim against the insured to which the policy potentially applies'") (citation omitted).

The duty to defend is much broader than the duty to indemnify. *See Cay Divers, Inc. v. Raven*, 812 F.2d 866, 869 (3rd Cir. 1987). When it is unclear whether an insurer has a duty to indemnify an ongoing lawsuit because the complaint alleges claims that could ultimately be covered, the insurer must defend until the basis for the policyholder's liability is determined. *See C.H. Heist Caribe Corp.*, 640 F.2d at 483. Further, if a "single claim in a multi-claim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).

The District Court erred in its analysis by failing to distinguish between the duty to defend and indemnify; failing to determine whether certain claims in the Yellow Cedar Action were potentially covered even if others were not; and failing to consider whether future claims could potentially be covered when the Yellow Cedar Action remained active and its facts and allegations remained in flux. *See*

22

*C.H. Heist Caribe Corp.*, 640 F.2d at 483 ("Actual indemnification depends upon the existence or nonexistence of facts not yet established. … Thus, a decision on American's obligation to indemnify Heist is premature at this stage of the proceedings").

As discussed below, the allegations of the Yellow Cedar Action complaint potentially trigger at least four different coverage parts in the Policy: (1) Coverage A – Bodily Injury and Property Damage Liability; (2) Coverage B – Personal Injury and Advertising Injury Liability; (3) the Limited Pollution Coverage Form – Work Sites; and (4) the Commercial Auto part. The allegations in the Yellow Cedar Action complaint are broad and far-reaching, and include claims related to bodily injury, property damage, emotional distress, noise, engine emissions, nuisance, trespass, takings, and interference with the use and enjoyment of property. If any of these allegations raise even the possibility of coverage under any of the four coverage parts cited above, Reliance was required to fully defend Devcon against the Yellow Cedar Action.

**B.    <u>Policy Exclusions are Construed Against the Insurer and in Favor of the Insured</u>**

The interpretation, construction and legal effect of an insurance policy is a question to be determined by the court as a matter of law. *Coakley Bay Condominium Ass'n v. Continental Ins. Co.*, 770 F.Supp.1046, 1050 (D.V.I.l99l) (citing *Berne v. Aetna Insurance Co*, 604 F.Supp. 958 (D.V.I.), aff'd, 782 F.2d

1026 (3d Cir.1985)).  Insurance policies are to be interpreted in a manner that is consistent with the parties' reasonable expectations.  *Amerada Hess Corp. v. Zurich ins. Co.*, 29 Fed. Appx. 800, 805 (3d Cir. 2002).  "Coverage will be provided if policy language is 'insufficiently clear to justify depriving the insured of [its] reasonable expectation that coverage would be provided.'"  *Id.* (citations omitted).

"Exclusionary clauses must be clear, definite and explicit."  *Coakley Bay*, 770 F.Supp. at 1050 (citations omitted).  The "understanding of an ordinary person is the standard to be used in construing the insurance policy."  *Evanston Ins. Co. v. Treister*. 794 F.Supp. 560, 569 (D.V.I.l992).  If an insurer does not clearly and unequivocally express its intent to exclude when it could have done so easily supports a conclusion that the relevant language is ambiguous.  *Id.* at 1049 (citing *Buntin v. Continental Ins. Co.*, 583 F.2d 1201, 1206 (3d 1978).

"If the insured proffers a reasonable interpretation of an ambiguous term, then that term controls and the insured is entitled to judgment as a matter of law so long as the undisputed facts fall within the purview of the meaning offered by the insured."  *Amerada Hess Corp. v. Zurich ins. Co.*, 29 Fed. Appx. 800, 803 (3d Cir. 2002) (quoting *In re Tutu Water Wells Contamination Litigation*, 78 F.Supp. 2d 456, 466 (D.V.I. 1999).  *See also Buntin v. Continental Ins. Co.*, 583 F.2d 1201, 1206 (3d 1978) (where "there is more than one reasonable reading of a policy

24

provision ... that provision must be construed against the insurance company which has drafted it"); *Mahogany Run Condominium Assoc. Inc. v. Certain Underwriters at Lloyds*, 2004 WL 1987236 (D. V.I. Aug. 30, 2004) ("Virgin Islands law, as expressed in the Restatement of Contracts, states that in choosing between two reasonable interpretations of a contract, the court should rely on the interpretation 'which operates against the party who supplies the words or from whom a writing otherwise proceeds.'") (quoting Restatement (Second) of Contracts §206). If an ambiguity exists, it must be construed against the insurer in favor of coverage. *Vlastos v. Sumitomo Marine & Fire Ins. Co. (Europe) Ltd.*, 707 F.2d 775, 778 (3d Cir.1983); *Evanston Ins. Co. v. Treister*, 794 F. Supp. 560, 569 (D.V.I. l992).

### C.   The Pollution Exclusion is Ambiguous

#### (1)   Ambiguity Must be Read Against Reliance

Under Virgin Islands law, "where there is more than one reasonable interpretation of an insurance provision . . . that provision must be construed against the insurance company which has drafted it." *Amerada Hess Corp. v. Zurich Ins. Co.*, 29 Fed. Appx. 800, 805 (3d Cir. 2002) ("*Amerada Hess*") (quoting *Buntin v. Continental Ins. Co.*, 583 F.2d 1201, 1207 (3d Cir. 1978)). Thus, any ambiguity in the language of the Policy must be construed against Reliance and in favor of Devcon. *See id.; see also In re Tutu Water Wells Contamination Litig.*, 78 F. Supp.2d 456, 466 (D.V.I. 1999); *Mahogany Run Condo. Ass'n. Inc. v. Certain*

*Underwriters at Lloyds*, No. Civ. 2003-51, 2004 WL 1987236, at *3 (D.V.I. Aug. 30, 2004) ("*Mahogany Run*"); *Evanston Ins. Co. v. Treister*, 794 F. Supp. 560, 572 (D.V.I. 1992).

> **(2)    Under Virgin Islands Law, the Pollution Exclusion in the Policy is Ambiguous as Applied to Negligence Claims Arising Out of Normal Business Activities**

Three prior decisions interpreting Virgin Islands law have addressed the question of whether the pollution exclusion is ambiguous as applied to liability other than that arising from traditional environmental pollution claims: *Amerada Hess*, *Mahogany Run*, and *General Star Indem. Co. v. V.I. Port Authority*, 48 V.I. 696 (D.V.I. 2007) ("*General Star*").  The only decision to have found the exclusion to be unambiguous is *General Star*.  *General Star* is a related case to the current case which involved coverage for the same Yellow Cedar Action and was decided by the same District Court judge.[1]  The only case applying Virgin Islands law cited by the District Court in its Opinion was *General Star*.

The District Court did not refer at all to *Amerada Hess* in its Opinion. Although Devcon recognizes that the *Amerada Hess* decision is non-precedential,[2] Devcon respectfully submits that the analysis in *Amerada Hess* is not to be ignored, as it is on-point, comprehensive, and highly persuasive.

---

[1]    The policyholder in the *General Star* case, VIPA, did not appeal the *General Star* decision, as it has been indemnified by Devcon and its umbrella insurer.

[2]    *See* Third Cir. I.O.P. IOP 5.7 (July 1, 2002).

In *Amerada Hess*, several workers employed by a subcontractor of Amerada Hess claimed bodily injuries resulting from exposure to catalytic fluid that was discharged when a hose from a delivery tank truck burst. *Amerada Hess* at 802. The insurance company argued that coverage was excluded by the pollution exclusion in its policy, which provided:

> This insurance does not cover any liability for:
>
> Personal Injury or Property Damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids, or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water …

*Id.*[3]  The Court disagreed, finding that the pollution exclusion was ambiguous and construing it in favor of the policyholder. *See id.* at 805.

The *Amerada Hess* Court noted that the regulatory history of the pollution exclusion demonstrated that it was intended to exclude coverage only for liability related to traditional environmental spills or discharges. *See id.* at 804.  The Court

---

[3]     The *Amerada Hess* pollution exclusion is not significantly different from the pollution exclusion at issue in this case, which is a standard-form "Total Pollution Exclusion".  Some other cases cited herein involve interpretation of the "Absolute Pollution Exclusion".   There are several variations of these standard-form exclusions, as they are amended from time to time by the insurance industry.  For purposes of the questions submitted, it is Devcon's belief that the historical variations in the standard-form pollution exclusion, and the differences between versions of the Absolute Pollution Exclusion and the Total Pollution Exclusion, are immaterial.  *See generally Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 795 N.E.2d 15 (N.Y. 2003).

27

noted that "'the predominant motivation in drafting an exclusion for pollution-related injuries was the avoidance of the 'enormous expense and exposure resulting from the 'explosion' of environmental litigation.'"" *Id*. (citing *American States Ins. Co. v. Koloms*, 687 N.E.2d 72, 81 (Ill. 1997).

The *Amerada Hess* Court further noted a split in authority among courts in other jurisdictions, and the fact that "'the source of the disagreement within the jurisprudence seems to lie in the fact that the language of the clause is 'quite specific' on its face, and yet a literal interpretation of that language results in an application of the clause which is 'quite broad.'" *Id*. (citations omitted).

Ultimately, the Court determined that the pollution exclusion was ambiguous, and reversed the trial court's grant of the insurer's motion for summary judgment. The Court criticized the trial court for "fail[ing] to realize that "'conflicting interpretations of the policy is strongly indicative of th[is] policy's essential ambiguity.'" *Id*. (citing *New Castle County v. National Union Fire Ins. Co. of Pittsburgh, PA,* 174 F.3d 338, 347 (3d Cir. 1999)). The Court concluded that the very fact that the insurer and policyholder were "able to offer conflicting, yet 'compelling,' interpretations establishes the essential ambiguity in this policy." *Id*.

The district court in *Mahogany Run* reached the same conclusion. In that case, the insurer argued that claims related to claimants' exposure to a "thoro-seal"

polymer that had contaminated tap water were excluded from coverage by the policy's pollution exclusion. *Mahogany Run* at *3. The pollution exclusion at issue in *Mahogany Run* provided:

> This insurance does not apply to:
>
> ...
>
> f. Pollution
>
> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
>
> ...
>
> Pollutants mean any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste...

*Id*. at *1.

The *Mahogany Run* court determined that it was "just as reasonable to read the [pollution exclusion] provision as exempting only environmental pollution" as it was to read it exclude coverage for the claims at issue. *Id*. at *3. The court further noted that the policyholder's interpretation was reasonable because the provision "uses terms commonly associated with environmental pollution." *Id*. As the Court in *Amerada Hess* had concluded, the *Mahogany Run* court concluded that "[s]uch conflicting but reasonable interpretations demonstrate the policy's essential ambiguity" (citing *New Castle County,* 174 F.3d at 347-52).

29

**(3)     The District Court Erred in Its Application of Existing Virgin Islands Law**

As is noted above, the District Court did not refer to *Amerada Hess* in its Opinion, and only relied on its own related decision in *General Star* in determining that the pollution exclusion is unambiguous under Virgin Islands law.  The District Court apparently saw no need to apply Virgin Islands law to the facts of this case, as it had construed the pollution exclusion within the context of the same Yellow Cedar Action allegations in its *General Star* decision.  Because the District Court essentially piggy-backed its decision in this case on its *General Star* decision, it is necessary to refer to the District Court's analysis in *General Star* to fully understand the source of the error in its Opinion in this case.

*General Star* involved the application of an employment practices and public liability policy that was purchased by Devcon for VIPA as part of the same St. Croix airport extension project.  The pollution exclusion at issue was substantially the same as the provision in the Policy, and the District Court applied the provision to the same allegations in the Yellow Cedar Action complaint.

The District Court in *General Star* cited one case – *Amerada Hess* – in support of its conclusion that the pollution exclusion was unambiguous.  The District Court held:

> The terms of the pollution exclusion are broad and unambiguous. *Cf. Amerada Hess Corp. v. Zurich Ins.*

30

> *Co.,* 29 Fed. Appx. 800, 801 (3d Cir. 2002) ("[T]he very
> fact that [the parties] were able to offer conflicting, yet
> 'compelling,' interpretations establishes the essential
> ambiguity in this policy.").

*General Star*, 48 V.I. at 704. The District Court further concluded:

> [R]easonably intelligent people would agree that terms of
> this exclusion cover claims relating to harm caused by
> 'any' solid, liquid, gaseous, or thermal irritant or
> contaminant regardless of whether the exact nature of the
> substance has been identified.

*Id.*

It is clear that the District Court miscited *Amerada Hess* to support its conclusion that the pollution exclusion is unambiguous, and in doing so overlooked the well-reasoned conclusions of trial and appellate judges in the Virgin Islands and in a majority of jurisdictions across the U.S. (as is discussed below). It is also clear that this error was imported from *General Star* to the District Court's Opinion in this case.

### (4)    The District Court Erred in Distinguishing *Mahogany Run*

Besides *General Star*, the only other case cited by the District Court in concluding in the Opinion that the pollution exclusion is unambiguous was *Mahogany Run*. The District Court briefly discussed *Mahogany Run*, and then concluded that it was distinguishable. The District Court concluded that the "fatal flaw" in Devcon's reliance on *Mahogany Run* in this case is that "there is no such ambiguity" in the Reliance pollution exclusion. Opinion at 12. The District Court

31

explained that the *Mahogany Run* pollution exclusion used "but for" language whereas the pollution exclusion in the Policy uses "arising out of" language. *See id*. The District Court determined that the "arising out of" language in the Policy, unlike the *Mahogany Run* "but for" language, "could not be any clearer." *Id*.

In reaching its conclusion, the District Court cited the wrong portion of the *Mahogany Run* pollution exclusion. The "but for" language cited by the District Court is found in the portion of the pollution exclusion that addresses government-mandated (e.g., Superfund) remediation. That portion of the exclusion was not at issue in this case or the *Mahogany Run* case. In fact, the *Mahogany Run* pollution exclusion language cannot be distinguished from the pollution exclusion language at issue in this case because they are essentially identical.

For ease of reference, the pollution exclusions at issue in both cases are set forth in the chart below:

| *Mahogany Run* Pollution Exclusion[4] | Reliance Pollution Exclusion |
|---|---|
| This insurance does not apply to: ... f. Pollution (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time. | This insurance does not apply to: f.(1) "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time. … |

---

[4]      *Mahogany Run* at *1.

| | |
|---|---|
| ...<br>Pollutants mean any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste... | Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste… |

As is obvious by the comparison above, the language is functionally the same, and the District Court referred to the wrong portion of the exclusion when it distinguished the language.  If the District Court had referred to the correct portion of the policy provision, it would have reached the same result as the *Mahogany Run* court – which is that the pollution exclusion is ambiguous when applied to instances of non-traditional "pollution" claims.

> **(5)    The Split of Authority Among Federal Circuit Courts and State Supreme Courts Demonstrates the Inherent Ambiguity of the Pollution Exclusion**

Courts across the country that have addressed the question of whether the pollution exclusion is ambiguous as applied to claims other than traditional pollution claims have split nearly equally, with a slight majority of courts determining that the exclusion is ambiguous or, even if unambiguous, contradicts policyholders' reasonable expectations.  Rather than chronicle those cases here, Devcon respectfully refers the Court to the recent *Apana* decision from the Ninth Circuit, which contains an excellent summary of the current state of the caselaw.

WPB 1053881.5

*See Apana v. TIG Ins. Co.*, 574 F.3d 679, 681 (9th Cir. 2009) (listing 19 cases finding the exclusion ambiguous and 17 cases finding it unambiguous).

Contrary to the District Court's belief that reasonably intelligent people could only conclude that the pollution exclusion is unambiguous, the split of authority recognized in *Apana* demonstrates the opposite. When so many capable judges disagree about the meaning of an insurance policy provision, the provision cannot be characterized as being unambiguous. Rather, as the Court held in *New Castle*, such conflicting interpretations are strongly indicative of the pollution exclusion's essential ambiguity." *New Castle County,* 174 F.3d at 347.

So many courts find the pollution exclusion to be ambiguous because a literal reading of the exclusion would produce nonsensical results. Dozens of cases have cited examples of the absurd coverage determinations that would be reached under a literal interpretation of the pollution exclusion. Devcon will not recite all of these cases here, but points the Court to the conclusions of the Seventh Circuit for a common recitation of this view:

> The terms "irritant" and "contaminant," when viewed in isolation, are virtually boundless, for "there is virtually no substance or chemical in existence that would not irritate or damage some person or property." Without some limiting principle, the pollution exclusion clause would extend beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled

> contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.

*Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 972 F.2d 1037, 1043 (7th Cir. 1992) (citations omitted).

### (6) Insurance Industry Regulatory Statements Confirm that the Pollution Exclusion Should Not be Read Literally

Numerous courts across the country have recognized that insurance industry testimony regarding the scope of the pollution exclusion demonstrates its latent ambiguity when applied beyond the context of traditional environmental pollution claims. For example, the New Jersey Supreme Court described in detail insurance industry representatives' characterization to New Jersey regulators of the pollution exclusion as intended to address industrial pollution, and not meant to apply to liability arising out of a policyholder's normal business operations. *See Nav-Its, Inc. v. Selective Ins. Co.*, 869 A.2d 929, 936-37 (N.J. 2005).

Several commentators have chronicled the statements of insurance industry representatives, who repeatedly stated to state regulators during the 1980s – when they were seeking regulatory approval of standard-form pollution exclusions – that that the pollution exclusion could not be read literally. For example, in hearings before the Texas State Board of Insurance in 1985, Liberty Mutual representative

Wade Harrel acknowledged in sworn testimony that the pollution exclusion was ambiguous: "We have overdrafted the exclusion. We'll tell you, we'll tell anybody else, we overdrafted it." *See* Transcript of Proceedings, Hearing to Consider, Discuss, and Act on Commercial General Liability Forms Filed by the Insurance Services Office, Inc., Texas State Board of Insurance. No. 1472. Vol. III. at 8 (Oct. 31, 1985) (cited in *Square Pegs Into Round Holes: The Limits Of The Absolute Pollution Exclusion In Products Claims*, Lorelie S. Masters, American Law Institute - American Bar Association Continuing Legal Education, October 11-12, 2001).

Texas regulators insisted during hearings in 1985 that the proposed pollution exclusion could be read literally to exclude coverage for liability faced by a grocery store if a bottle of bleach fell off of a store shelf and a customer slipped on its spilled contents. The following exchange ensued between Mr. Harrel and Texas regulator Thornberry regarding this example:

> Mr. Harrel: That is a reading, yeah. It can be read that way.... I don't know anybody that's reading the policy that way, and I think you can read the new policy just the way you read it. But our insured would be at the state board--someone said yesterday--quicker than a New York minute if, in fact, every time a bottle of Clorox fell off a shelf at a grocery store and we denied the claim because it's a pollution loss.
>
> Mr. Thornberry: I have also heard the justification that if an insurance company denied the claim and you went to

36

the courthouse, the courts wouldn't read the policy that way.

Mr. Harrel: Nobody would read it that way.

*Id*. at 748. Such regulatory history has been deemed relevant to many courts addressing the question presented here, and Devcon respectfully submits that it should be relevant to the Court's inquiry as well.

### D.    The District Court Erred in Refusing to Apply the Reasonable Expectations Test

The District Court refused to consider Devcon's reasonable expectations of coverage, finding that such an analysis was unwarranted because it found the pollution exclusion to be unambiguous. Specifically, the District Court concluded:

Thus, because the policy unambiguously excluded coverage for the [Yellow Cedar Action] claims, there was no need to consider the Plaintiffs' reasonable expectations of coverage.

(App. p. 28) This was error. Although some jurisdictions only apply the reasonable expectations test when policy language is ambiguous, Virgin Islands law requires application of the reasonable expectations test even if the policy language is facially unambiguous. *See, e.g., Amerada Hess,* 29 Fed. Appx. at 805.

Pursuant to V.I. Code Ann. tit. 1 § 4 (2005), in the absence of local laws to the contrary, the "rules of common law, as expressed in the restatements of law adopted by the American Law Institute, and to the extent not so expressed, as

37

generally understood and applied in the United States, shall be the rules of decision." Thus, the District Court should have applied the reasonable expectations test found in the Restatement (Second) of Contracts § 211.

Under the Restatement reasonable expectations test, a non-drafter of a standardized agreement is "not bound to unknown terms which are beyond the range of reasonable expectations." Restatement (Second) of Contracts § 211, cmt. f. (1979). This includes a term that is "bizarre or oppressive," "eviscerates the nonstandard terms explicitly agreed to," or "eliminates the dominant purpose of the transaction." *See id.*

The Restatement reasonable expectations analysis frequently has been employed in insurance coverage cases. *Couch on Insurance* explains:

> In practice, the rule is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though a painstaking study of insurance provisions would have negated those expectations.

*Couch on Insurance* 2d § 22:11 (2007). It is applied frequently in insurance coverage cases in recognition that insurance policies are contracts of adhesion, and that policyholders generally only assent to the general scope of coverage as it is represented to them. *See, e.g.,* Robert Keeton*, Insurance Law Rights at Variance with Policy Provisions*, 83 Harv. L. Rev. 961 (1970).

38

The "reasonable expectations of the insured is the focal point of the insurance transaction…regardless of ambiguity, or lack thereof, inherent in a given set of documents." *UPMC Health System v. Metropolitan Life Insurance Co*., 391 F.3d 497, 503 (3d Cir. 2004), citing *Collister v. Nationwide Life Ins. Co*., 479 Pa. 579, 388 A.2d 1346, 1353 (1978). The Third Circuit has repeatedly emphasized that

> [T]he insurer is bound not only by the expectations that it creates, also by any other reasonable expectations of the insured. The insured's reasonable expectations control, even if they are contrary to the explicit terms of the policy.

*Medical Protective Co. v. Watkins*, 198 F.3d 100, 106 (3d Cir. 1999) (quoting *West American Ins. Co. v. Park*, 933 F.2d 1236, 1239 (3d Cir. 1991).

Although not all jurisdictions apply the reasonable expectations test even when construing facially unambiguous policy language, the Restatement approach, and the approach commonly utilized in the Third Circuit, makes sense. If courts were to apply the reasonable expectations test in the form that was applied by the District Court, and limited its application to language that is ambiguous on its face, then the doctrine would be meaningless. The *contra proferentem* doctrine already gives policyholders the benefit of ambiguous policy language. The reasonable expectations test takes the analysis to the next step by viewing the policy language not simply according to their plain words but in light of the nature of the

policyholder's business and the purpose of liability insurance purchased by the policyholder to protect that business. *See Amerada Hess,* 29 Fed. Appx. at 805.

The *Amerada Hess* court correctly focused on the nature of the policyholder's business and its reasonable belief that it was purchasing coverage for liabilities arising out of its normal business activities. In light of these reasonable expectations, the court determined that the insurer's interpretation of the pollution exclusion would "swallow the very coverage that Hess was paying for." *Amerada Hess*, 29 Fed. Appx. at 805. The court reasoned:

> We do not believe that HOVIC, a company whose business involved handling and processing toxic materials, consciously negotiated an insurance policy with an annual premium of $1 million and intended to exclude damages resulting from all discharges of toxic materials anywhere on land, air or sea.

*Id.*

Had the District Court applied the Restatement reasonable expectations test, it should have come to a similar conclusion as the *Amerada Hess* court and the majority of courts around the country that have performed the analysis in analogous contexts. As a general contractor, V.I. Cement had a reasonable expectation that any liability incurred as a result of its negligent performance of its construction activities would be covered. Devcon could not have expected that in preparing a construction site by moving dirt around it was actually "discharging" a "pollutant".

40

Other cases construing the pollution exclusion in the context of normal construction activities have come to similar conclusions. *See, e.g., Molton, Allen & Williams, Inc. v. St. Paul Fire and Marine Ins.*, 347 So.2d 95, 97 (Ala. 1977) ("sand" cannot be construed to fall within a general class of substances, i.e. "irritants, contaminants or pollutants."); *Tsakopolous v. American Manufacturers Mutual Ins. Co.*, 2003 WL 22595248 (E.D. Cal 2000) citing *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1265, 10 Cal.Rptr.2d 538 (1992) (holding that coverage for the discharge of soil "is consistent with the insured's objectively reasonable expectations"). As the court stated in *Molton*:

> We do not believe that the insured real estate developer, by a reading of the exclusion clause would reasonably expect that the alleged damage caused by its construction activity would be included in the descriptions set out in the pollution exclusion clause.

*Molton*, 347 So.2d at 98.

Given the nature of Devcon's construction business, it was objectively reasonable for Devcon to believe that the Policy provided coverage for liabilities arising out of the ordinary course of its business. It also was objectively reasonable for Devcon to believe that the caliche dust it stirred up during its construction activities was not a "pollutant" because it is a naturally-occurring material that is literally the stuff St. Croix is made of.[5]

---

[5] The soil in St. Croix is predominantly made of caliche, also referred to

In short, it was objectively reasonable for Devcon to believe that the pollution exclusion did not apply to it, because, while it may have been a negligent contractor, it was not a polluter.

### E. Even if Devcon Did Not Have a Reasonable Expectation of Coverage for Certain Yellow Cedar Action Liabilities, the Pollution Exclusion Does Not Eliminate All Defense and Indemnity Coverage Under the Policy

Even if the pollution exclusion excluded any possibility of coverage for claims related to dust under Coverage A of the Policy, it was error for the District Court to determine that the exclusion barred coverage for all Yellow Cedar Action claims under all of the Policy's coverage parts.

### (1)    Devcon Purchased Work Site Pollution Coverage

Devcon purchased from Reliance a Work Site Pollution Endorsement, which provided coverage for pollution events arising out of Devcon's activities at a work site.  (App. p. 861)  The Work Site Pollution Endorsement is an exception to the pollution exclusion which provides limited coverage for certain pollution claims arising out of Devcon's work site activities.  Devcon's position is that caliche dust is not a pollutant, and pollution coverage is not triggered by the Yellow Cedar Action claims.  However, to the extent that the Court determines that coverage for

---

as calcium carbonate. *St. Croix Environmental Information Repository: St Croix Soil*,  http://www.usvircd.org/STXEIR/STXsoils.htm (last modified September 1, 2006). The Third Circuit Court of Appeal can take judicial notice of geological or scientific facts such as this. *See Central Green Co. v. U.S.*, 531 U.S. 425, 434 (2001).

certain Yellow Cedar Action claims are barred by the pollution exclusion, the Work Site Pollution Endorsement would provide coverage.

To be covered by the Work Site Pollution Endorsement – and excepted from the Policy's general pollution exclusion – liability must arise out of: (a) a "pollution incident"; (b) at a "work site"; (c) which commences and ends within 72 hours; and (d) which occurs during the policy period.  If caliche dust is considered a pollutant under the pollution exclusion, then claims related to the release of caliche dust would arise out of a "pollution incident".  Further, it is undisputed that Devcon's activities occurred at a "work site".  Finally, it is undisputed that such "pollution incidents" occurred during the policy period.

The only potential basis to exclude coverage under the Work Site Pollution Endorsement would be that the "pollution incidents" did not begin and end within a 72-hour period.  Devcon submits that the 72-hour requirement is ambiguous in the current context because the Yellow Cedar Action claims arose out of a series of construction activities, any of which could be considered a "pollution incident" that began and ended within 72 hours.  *See Konell Construction and Demolition Corp. v. Valiant Ins. Co*., No. CV03-412-MO, 2006 WL 1360956, *3-5 (D. Or. May 15, 2006) (finding the 72-hour requirement to be ambiguous as applied to continuous construction activities, and construing it against the insurer and in favor of coverage).  A determination of whether coverage exists under the Work Site

43

Pollution Endorsement raises issues of fact that preclude summary judgment.

### (2) Devcon's Business Auto Coverage Covers Liability Arising Out of Engine Emissions

The Policy also contains Business Auto coverage for liabilities arising out of excessive engine emissions and "Covered pollution cost of expense" related to damage caused by Devcon's construction vehicles. (App. p. 923) It is undisputed that the pollution exclusion that applies to Coverage A does not apply to the Business Auto coverage part. The Business Auto pollution exclusion excludes coverage only for liabilities arising out of "pollutants" that are being transported. The allegations in the Yellow Cedar Action complaint predominately claim damage due to dust created by Devcon's construction machinery during construction activities, and not due to the transport of dirt or dust. *See Sphere Drake Ins. PLC v. Gainsco County Mut. Ins. Co.*, 273 F.3d 1100, 2001 WL 1071530, at *3 (5th Cir. 2001) (finding coverage under the Business Auto part for, *inter alia*, allegations that construction vehicles stirred up sand, gravel, and caliche) ("*Sphere Drake*"). Since the allegations in the Yellow Cedar Action complaint do not specifically relate to the transportation of caliche, the applicable pollution exclusion in the Business Auto coverage part does not apply.

*Sphere Drake* involved coverage for allegations strikingly similar to the allegations contained in the Yellow Cedar Action complaint. The court analyzed the pollution exclusion contained in the Business Auto part, which is substantially

44

identical to the provision at issue here, and found that several allegations were outside of the pollution exclusion found in the Business Auto part, including the allegation that

> Operation of the normally illegally tarped vehicles carrying sand, gravel and cement, off paved surfaces and onto areas where the sand, gravel and caliche has settled serves to cause more particulates and toxic substances to enter the lungs of the Plaintiffs herein …

*Sphere Drake* at *3.  The *Sphere Drake* court concluded:

> These allegations are subject to the reasonable interpretations that some of the pollutants allegedly causing injury were not being transported by the insured's vehicles, but rather were already lying on the surface of unpaved roads and trials by virtue of prior escapement from other haulers and were thereinafter stirred up by passing vehicles, including some belonging to the insured, of a type covered by the policies.

*Id.*  Because the Yellow Cedar plaintiffs' allegations generally relate to excessive dust caused by normal construction activities, and not the transport of caliche, insurance coverage for such allegations is available under the Business Auto part of the Policy and is not excluded by the pollution exclusion contained in this part.

In addition, even if the pollution exclusion in the Business Auto part applied to any part of the Yellow Cedar plaintiffs' allegations, the exclusion contains an explicit exception for "exhaust gases" released from most types of construction vehicles.  Thus, the allegations related to construction vehicle exhaust gases are

clearly covered by the Business Auto coverage part and not excluded by the pollution exclusion contained therein.

Finally, the Business Auto coverage part contains coverage for "Covered pollution cost or expense", which provides Devcon coverage for damages arising out of a demand to respond to "pollution" arising out of the operation of its construction vehicles. This coverage section contains coverage that is similar to the coverage found in exceptions in the Business Auto pollution exclusion, in that it explicitly covers liabilities arising out of "exhaust gases", as well as activities that do not involve the transport of pollutants.

### (3)    The Yellow Cedar Action Alleges "Personal Injury" Claims That are Not Subject to the Pollution Exclusion

The Yellow Cedar plaintiffs' taking, nuisance, trespass, and unlawful invasion/interference with use and enjoyment of property claims trigger the Policy's Coverage B – Personal Injury coverage part. The Policy defines "Personal Injury" to include:

> wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of: a. a room; b. a dwelling; or c. a premises; that a person occupies by or on behalf of its owner, landlord or lessor …

The Third Circuit has found this version of the personal injury definition to be ambiguous, and has construed it in favor of coverage. *See New Castle County, DE,* 243 F.3d at 749 ("invasion of the right of private occupancy" was ambiguous

and construing personal injury coverage for alleged violation of due process and equal protection rights relating to county zoning and permitting decision in insured County's favor).

In *New Castle County v. National Union Fire Ins. Co. of Pittsburgh*, 174 F.3d 338, 344-51 (3d Cir. 1999), the court exhaustively reviewed the policy language and authorities and concluded that the interpretations offered by both the policyholder and insurer were reasonable. The policyholder argued that the phrase "by or on behalf of owner, landlord or lessor" modified the word "occupies" and does not require the wrongdoer to be the landlord. *See id*. The insurer argued that the language modified the words that immediately preceded it ("that a person occupies"). *See id*. Since the court found both interpretations reasonable, it construed the ambiguous language against the insurer. *See New Castle,* 243 F. 3d at 749 n.2 (construing Delaware law); *see also Amerada Hess* at 803 ("If the insured proffers a reasonable interpretation of an ambiguous term, then that term controls and the insured is entitled to judgment as a matter of law so long as the undisputed facts fall within the purview of the meaning offered by the insured") (quoting *In re Tutu Water Wells Contamination Litigation,* 78 F. Supp.2d at 466). Accordingly, the Yellow Cedar plaintiffs' claims for unauthorized taking without just compensation, nuisance and invasion of quiet enjoyment of their property are

47

personal injuries under the Policy.[6]

The pollution exclusion clause in Coverage B of the Policy is much narrower than that found in the Coverage A pollution exclusion. The Coverage B pollution exclusion excludes coverage only for personal injury arising out of the discharge of pollutants from the policyholder's premises, or the policyholder's waste handling, or related to pollution brought into the site in connection with the policyholder's operations. None of these conditions apply here, and the narrow Coverage B pollution exclusion clearly does not apply to the personal injury claims.

### (4)    Coverage is Available for Allegations Related to Excessive Noise

The Yellow Cedar Action alleges emotional distress and other bodily injuries due to excessive noise, which triggers Reliance's coverage obligations under Coverage A and B of the Policy. Devcon is unaware of any support for the conclusion that noise is a "pollutant" within the meaning of the pollution exclusion, or that coverage is unavailable for claims of bodily injury caused by noise. The First Circuit specifically addressed the issue in *Titan Holdings Syndicate, Inc*, 898 F.2d at 268 (1st Cir. 1990), in which it determined that

---

[6] The district court acknowledged in *General Star Indem. Co. v. Virgin Islands Port Authority*, 48 V.I. 696 (D.V.I. 2007) that the Yellow Cedar plaintiffs' claims against VIPA were connected to the "principles of eminent domain…inverse condemnation, or condemnation proceedings…"

excessive noise from a city sewage treatment plant did not constitute "pollution" within the meaning of the pollution exclusion.    The *Titan Holdings* court concluded:

> While we agree that excessive light and noise possibly could be considered "pollutants," as that term is sometimes used, the relevant definition of the word is explicitly provided by the policies. According to the policies, a pollutant is "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Excessive noise and light may be "irritants," but they are not solid, liquid, gaseous or thermal irritants.3 Nor are they generally thought of as similar to smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste, the illustrative terms used in the policy definition. Noscitur a sociis. Since the policies' definition of "pollutants" does not include excessive noise and light, the policies protect the City from any portion of the Meanens' claim based on liability for bodily injury or property damage due to the noise and light coming from the City's sewage treatment plant.

*Titan Holdings Syndicate, Inc.*, 898 F.2d at 268.

The noise claims, like other allegations of the Yellow Cedar Action that are unrelated to any "pollution" claims, are potentially covered claims, and it was error for the District Court to conclude that defense and indemnity coverage was precluded for any and all claims against Devcon.  Rather, even if the District Court believed that certain claims were excluded by the Policy, it should have recognized that the pollution exclusion is not a neutron bomb that eviscerates all potential coverage under all coverage parts of the Policy.  At a minimum, the District Court

49

should have recognized the possibility that certain claims would ultimately be covered, and that, in such instances, the insurer must defend until "there is no possibility that the underlying plaintiff could recover on a covered claim." *Frog, Switch & Mfg. Co.*, 193 F.3d at 746.

## <u>CONCLUSION</u>

Based upon the foregoing, the ruling of the District Court should be reversed, and judgment should be entered in favor of Devcon on its Motion for Summary Judgment.

WPB 1053881.5

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that pursuant to Fed. R. App. P. 32(a)(7) that this

Brief contains no more than 11,614 words.

*s/ Jack J. Aiello*

Jack J. Aiello
Florida Bar No. 440566

## <u>CERTIFICATE OF THIRD CIRCUIT MEMBERSHIP</u>

I HEREBY CERTIFY, pursuant to L.A.R. 28.3(d) and 46.1(e), that the undersigned attorney has been admitted to the bar of this Court and is a member in good standing.

*s/ Jack J. Aiello*

Jack J. Aiello
Florida Bar No. 440566

## <u>CERTIFICATE OF IDENTICAL BRIEF AND VIRUS CHECK</u>

The undersigned hereby certifies that a virus check was performed on this file using McAfee VirusScan Enterprise 8.7i.   The undersigned also hereby certifies that the pdf file e-filed with this Court and the hard copies of the brief mailed to the Court are identical.

_s/ Jack J. Aiello_

Jack J. Aiello
Florida Bar No. 440566

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 21, 2009, I electronically filed the foregoing document and Appendix (Vol. 1) with the Clerk of Court using CM/ECF and sent via FedEx 10 hard copies to the Clerk. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

Electronic notice service list:

Douglas L. Capdeville, Esq.
videfense@capdevillelaw.com
Law Offices of Douglas L. Capdeville
Post Office Box 4191
2107 Company Street, Lot #4
Christiansted, St. Croix 00822-4191

Richard H. Hunter, Esq.
rhunter@hcbvilaw.com
Hunter, Cole & Bennett
1138 King Street, Suite 301
Christiansted, St. Croix 00820

James L. Hymes, III, Esq.
jimhymes@surfvi.com
No. 10 Norre Gade (P.O. Box 990)
St. Thomas, Virgin Islands 00804-0990

*s/ Jack J. Aiello*
Jack J. Aiello
Florida Bar No. 440566
jaiello@gunster.com
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive
Suite 500 East
West Palm Beach, FL 33401
Telephone: (561) 650-0716
Facsimile: (561) 655-5677

WPB 1053881.5

Attorneys for Appellants, Devcon International Corporation and V.I. Cement & Building Products

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

DEVCON INTERNATIONAL
CORPORATION, V.I. CEMENT &
BUILDING PRODUCTS, INC., d/b/a
MARK 21 INDUSTRIES, INC., d/b/a
CONTROLLED CONCRETE
PRODUCTS, INC., d/b/a
SPRINGFIELD CRUSHER,

      Appellants,

v.

RELIANCE INSURANCE
COMPANY and THE VIRGIN
ISLANDS GUARANTEE
ASSOCIATION,

      Appellees.

_____/

USCA NO. 07-4602 & 08-1996

D.C. No. 2001-201

ON APPEAL FROM A FINAL
ORDER OF THE DISTRICT COURT OF
THE VIRGIN ISLANDS, ST. CROIX DIVISION

**APPENDIX TO PRINCIPAL BRIEF OF APPELLANTS
VOLUME 1, pp. 1 - 51**

MAILING ADDRESS:

777 S. Flagler Drive
Suite 500 East
West Palm Beach, FL  33401
Tel.: 561-655-1980

JACK J. AIELLO
ROBERT H. FRIEDMAN
Gunster, Yoakley & Stewart P.A.
Attorneys for Appellants

Devcon International Corporation, et al. v. Reliance Insurance Company, et al.
No. 07-4602 & 08-1996

## **INDEX TO APPENDIX**

| Date Filed | Docket Entry | App. Pg. # | Description |
|---|---|---|---|
| 10/23/07 | 104 | 1-18 | Memorandum and Opinion Granting VIIGA's Motion for Summary Judgment and Denying Plaintiffs' Motion for Summary Judgment |
| 10/23/07 | 105 | 19-20 | Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiffs' Motion for Summary Judgment |
| 11/09/07 | 108 | 21-30 | Memorandum and Opinion Denying Plaintiff's Motion for Reconsideration |
| 11/09/07 | 109 | 31-32 | Order Denying Plaintiff's Motion for Reconsideration |
| 12/21/07 | 118 | 33-41 | Order Granting Defendant's Motion to Certify Judgment as Final Pursuant to Fed. R. Civ. P. 54(b) |
| 01/02/08 | 121 | 42-48 | Memorandum Opinion Granting VIIGA's Motion for Attorneys' Fees |
| 01/22/08 | 124 | 49-51 | Notice of Appeal by Devcon, Amended, re: 105, 109, 104, 118, 108, 121, 114 |

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

DEVCON INTERNATIONAL CORPORATION,  )
V.I. CEMENT & BUILDING PRODUCTS,   )
INC., d/b/a MARK 21 INDUSTRIES,    )
INC., d/b/a CONTROLLED CONCRETE    )     Civil No. 2001-201
PRODUCTS, INC., d/b/a SPRINGFIELD  )
CRUSHER,                           )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )
                                   )
RELIANCE INSURANCE COMPANY and THE )
VIRGIN ISLANDS INSURANCE GUARANTY  )
ASSOCIATION,                       )
                                   )
                                   )
          Defendants.              )
_____)

ATTORNEYS:

Maria T. Hodge, Esq.
Denise Francois, Esq.
St. Thomas, U.S.V.I.
     *For the plaintiffs.*

Douglas L. Capdeville, Esq.
St. Croix, U.S.V.I.
     *For defendant Reliance Insurance Company.*

Richard H. Hunter, Esq.
St. Croix, U.S.V.I.
     *For defendant The Virgin Islands Insurance Guaranty
     Association.*

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 2

## MEMORANDUM OPINION

GÓMEZ, C.J.

Before the Court are motions for summary judgment by Devcon International Corporation ("Devcon")[1] and V.I. Cement & Building Products, Inc. ("V.I. Cement") (together, the "Plaintiffs")[2], and defendant the Virgin Islands Insurance Guaranty Association ("VIIGA"). For the reasons given below, the Court will grant VIIGA's motion for summary judgment and deny the Plaintiffs' motion for summary judgment.

## I. FACTS

The factual background of this case is long and tedious. At bottom, the issue in this case is whether an insurer is bound by an insurance policy to cover its insured in relation to certain claims.

Devcon is a Florida corporation and the parent company of V.I. Cement, a Delaware corporation with its principal place of business in Florida. In September 1999, V.I. Cement, a Delaware

---

[1] On December 28, 2006, Devcon and V.I. Cement made a second motion to amend and supplement their complaint. The redlined Third Amended and Second Supplemental Complaint Devcon and V.I. Cement removed Devcon as a plaintiff. The Magistrate Judge denied the motion in an order dated August 9, 2007. Devcon will thus remain a plaintiff in this action.

[2] V.I. Cement filed the motion alone. On October 17, 2007, Devcon joined in the motion.

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 3

company, entered into a contract with the Virgin Islands Port

Authority ("VIPA") to perform work on the "Runway Extension

Construction Project" (the "Project") at the Henry E. Rohlsen

Airport located on St. Croix, U.S. Virgin Islands.  V.I. Cement

commenced work on the Project in October, 1999.

In December, 1999, residents in the vicinity of the Project

began complaining to VIPA of excessive dust in the area.  In

response to the complaints, the Virgin Islands Department of

Planning and Natural Resources issued an order for remedial

action to be taken.  Later that month, the residents filed claims

with the United States Environmental Projection Agency,

complaining that the excessive dust was causing physical injury.

VIPA settled some of the claims of the residents.  Pursuant

to that settlement, VIPA agreed to pay the relocation expenses

for those residents.  V.I. Cement bore some of the relocation

costs.  Devcon sought reimbursement from its insurer, Reliance,

for the relocation expenses paid by V.I. Cement.  Reliance

concluded that Devcon's request was excluded from coverage by an

insurance policy (the "Policy" or the "Insurance Policy") that

Devcon had purchased from Reliance.[3]  Consequently, Reliance

---

[3]   Devcon and V.I. Cement were named insureds under the
Policy from April 1, 1999 through April 1, 2000.  The relevant
section of the Policy is named, "Commercial General Liability
Coverage Part."

3

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 4

refused to compensate Devcon.

In April 2001, the residents filed suit (the "*Antoine*

Litigation")[4] against VIPA and V.I. Cement, alleging, *inter alia*,

that the excessive dust from the Project had resulted in physical

and psychological harm as well as property damage.  The *Antoine*

Litigation is still pending.

The Plaintiffs sought indemnification from Reliance for any

liability that they might incur from the *Antoine* Litigation.

Reliance declined.  As a result, on October 25, 2001, the

Plaintiffs filed this declaratory action to have the Court

determine the scope of coverage under the Policy.

On October 3, 2001, Reliance was adjudicated to be insolvent

by an Order of Liquidation of the Commonwealth Court of

Pennsylvania.[5]  Thereafter, the Plaintiffs filed their First

Amended Complaint, adding as a defendant the Virgin Islands

Insurance Guaranty Association ("VIIGA"), a Virgin Islands

nonprofit unincorporated legal entity.[6]  Pursuant to the Order of

---

[4]  *Antoine et. al. v. V.I. Port Authority et. al.*, Civil No.
2001-63 (D.V.I. filed April 9, 2001).

[5]  *M. Diane Koken, Insurance Commissioner of the
Commonwealth of Pennsylvania v. Reliance Insurance Company*, No.
269 M.D. 2001.

[6]  VIIGA exists pursuant to Chapter 10, Title 22 of the
Virgin Islands Code.  22 V.I.C. § 237(a) provides that when an
insurer becomes insolvent, VIIGA is deemed the insurer to the
extent of the insurer's obligations, rights and duties on covered

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 5

Liquidation, on May 17, 2002, this Court granted Reliance's
motion for an indefinite stay of this action.[7]  The Plaintiffs
moved for partial relief from this ruling.  This Court denied the
motion for partial relief on November 8, 2002.  That same day,
the Plaintiffs filed a notice of appeal to the Third Circuit
Court of Appeals.  The parties later executed a stipulation for
dismissal of the appeal without prejudice.  The Third Circuit
accordingly entered an order dismissing the appeal on September
22, 2004.

On October 14, 2005, this Court partially vacated its May
17, 2002 stay to allow the Plaintiffs and VIIGA to litigate their
respective claims and counterclaims.  The stay as to Reliance
remained in effect.

In March, 2002, the Plaintiffs filed their First Amended
Complaint.  In their complaint, the Plaintiffs request a
declaratory judgment defining the scope and nature of VIIGA's
responsibilities to the Plaintiffs for any liabilities alleged in
the *Antoine* Litigation.  The Plaintiffs now seek summary
judgment, arguing that the Policy requires VIIGA to cover them
for any liabilities arising out of the *Antoine* Litigation.  VIIGA

---

claims.

    [7]  The caption of the Court's order did not at the time of
the stay include VIIGA as a defendant.

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 6

also moves for summary judgment, arguing that the Policy excludes

the Plaintiffs' claims from coverage.

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232

(3d Cir. 1986).

The movant has the initial burden of showing there is no

genuine issue of material fact, but once this burden is met it

shifts to the non-moving party to establish specific facts

showing there is a genuine issue for trial. *Gans v. Mundy*, 762

F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest

upon mere allegations, general denials, or . . . vague statements

. . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.

1991). "[T]here is no issue for trial unless there is sufficient

evidence favoring the non-moving party for a jury to return a

verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249 (1986). "[A]t the summary judgment stage the

judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 7

is a genuine issue for trial." *Id.*   In making this determination,

this Court draws all reasonable inferences in favor of the

non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850

(2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d

Cir. 1994).

### III.  <u>ANALYSIS</u>

**A.    The Scope of Coverage under the Policy**

"The interpretation, construction and legal effect of an

insurance policy is a question to be determined by the court as a

matter of law." *Coakley Bay Condominium Ass'n v. Continental Ins.

Co.*, 770 F. Supp. 1046, 1050 (D.V.I. 1991) (citing *Berne v. Aetna

Insurance Co.*, 604 F. Supp. 958 (D.V.I.) *aff'd*, 782 F.2d 1026 (3d

Cir. 1985)).   Courts interpreting insurance policies should read

the provisions  within the context of the entire policy and any

extensions attached thereto. *Id.* at 1051; 22 V.I.C. § 846

(2004).[8]  Furthermore, courts "should read policy provisions to

---

[8]  Title 22, section 846 of the Virgin Islands Code
provides:

> Every insurance contract shall be construed according
> to the entirety of its terms and conditions as set
> forth in the policy, and as amplified, extended, or
> modified by any rider, endorsement, or application
> attached to and made a part of the policy.

22 V.I.C. § 846.

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 8

avoid ambiguities, if possible, and not torture the language to

create them." *Northbrook Ins. Co. v. Kuljian Corp.*, 690 F.2d 368,

372 (3d Cir. 1982) (quoting *St. Paul Fire & Marine Ins. Co. v.*

*United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981)).

If the terms of a policy are unambiguous, it must be

construed according to its plain language.  Indeed, the

"understanding of an ordinary person is the standard to be used

in construing the insurance policy." *Evanston Ins. Co. v.*

*Treister,* 794 F. Supp. 560, 569 (D.V.I. 1992).  If any ambiguity

exists, however, it must be construed against the insurer, and in

a manner which is more favorable to coverage. *Vlastos v. Sumitomo*

*Marine & Fire Ins. Co. (Europe) Ltd.*, 707 F.2d 775, 778 (3d Cir.

1983); *Evanston Ins. Co. v. Treister*, 794 F. Supp. 560, 569

(D.V.I. 1992).

**1.    The Plaintiffs' Claims**

The Plaintiffs and VIIGA dispute whether claims from the

*Antoine* Litigation are covered by the Insurance Policy.  When

determining whether a given claim is covered under an insurance

policy, the burden is on the insured to establish coverage in the

first instance. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d

197, 206 (3d Cir. 2001) (citation omitted).  The Plaintiffs cite

the following language from the Policy in support of its

contention that its claims are covered by the Policy:

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 9

> We will pay those sums that the insured becomes legally
> obligated to pay as damages because of bodily injury or
> property damages to which this insurance applies.  This
> insurance applies only to bodily injury and property
> damage which occurs during the policy period.  The
> bodily injury or property damage must be caused by an
> occurrence.  The occurrence must take place in the
> coverage territory.  We will have the right and duty to
> defend any suit to which this insurance applies,
> seeking those damages.

(Pls.' Statement of Undisputed Facts, Exh. 1 at 3).

It is undisputed that the Policy was in effect from April 1,

1999 through April 1, 2000.  It is also undisputed that the

Policy defines (1) "bodily injury" as "bodily injury, sickness or

disease sustained by a person, including care, loss of services

or death resulting from any of these at any time"; (2) "coverage

territory" as "the United States of America (including its

territories and possessions), Puerto Rico and Canada"; (3)

"occurrence" as "an accident, including continuous or repeated

exposure to substantially the same general harmful conditions;

and (4) "property damage" as "physical injury to tangible

property, including all resulting loss or use of that property

[or] loss of use of tangible property that is not physically

injured." (Pls.' Statement of Undisputed Facts, Exh. 1 at 14-17).

The parties also do not dispute that the residents in the

*Antoine* Litigation seek relief from bodily and property damage

from "pollutants, dust and contaminants" caused by the Project

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 10

beginning in October 1999. The residents thus allege bodily

injury and property damage from events that occurred within the

coverage territory and during the coverage period. These claims

clearly fall within the scope of the Policy.

## 2.    The Policy's Pollution Exclusion Clauses

VIIGA argues that the Policy's exclusion clauses bar

coverage of the Plaintiffs' claims. Whereas the policy-holder

must establish that a claim falls within the scope of coverage in

the first instance, the insurer bears the burden of proving that

an exclusion bars coverage. *Nationwide Mut. Ins. Co.*, 258 F.3d at

206. VIIGA cites the following language in support of its

argument that the Policy's pollution exclusion clause bars

coverage:

This insurance does not apply to:

(1) "Bodily injury" or "property damage" which would
not have occurred in whole or part but for the actual,
alleged or threatened discharge, dispersal, seepage,
migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or
others test for, monitor, clean up, remove,
contain, treat, detoxify or neutralize, or in
any way respond to, or assess the effects of
pollutants;

. . . .

Pollutants means any solid, liquid, gaseous, or thermal
irritant or contaminant including smoke, vapor, soot,
fumes, acid, alkalis, chemicals and waste . . . .

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 11

(Defs.' Mem. of Law at 9).  The Policy's exclusions are
practically identical to the exclusions this Court reviewed in
*General Star Indemnity Co. v. V.I. Port Authority*, Civil No.
2001-188, 2007 U.S. Dist. LEXIS 4444 (D.V.I. Jan. 5, 2007), which
arose from the same facts as those in this action.

In *General Star*, the Court granted summary judgment to the
insurer, General Star Indemnity Company, against its insured,
VIPA, for claims arising out of the residents' claims.  The Court
found that "reasonably intelligent people would agree that terms
of [the] exclusion cover claims relating to harm caused by 'any'
solid, liquid, gaseous, or thermal irritant or contaminant" and
that "[t]he terms of the pollution exclusion are broad and
unambiguous." *Gen. Star Indem. Co.*, 2007 U.S. Dist. LEXIS 4444,
at *14.  The Court further held that "[a]n ordinary reading of
the terms of exclusion supports the unambiguous proposition that
it applies to damages caused by the release of 'any' substance
that could cause irritation or contamination, including dust or
other unidentified 'pollutants.'" *Id.* at *15.

Notwithstanding the Court's ruling in *General Star*, the
Plaintiffs argue that a contrary result is required here.  In
support of this argument, the Plaintiffs rely on this Court's
decision in *Mahogany Run Condominium Association v. Certain
Underwriters at Lloyds*, Civil No. 2003-51, 2004 U.S. Dist. LEXIS

11

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 12

17751, at *9-10 (D.V.I. Aug. 30, 2004).  That reliance is

misplaced.

In that case, the Court found a policy exclusion ambiguous,

and thus granted summary judgment for the plaintiff insured.  The

exclusion in *Mahogany Run* provided that the policy did not cover

"'[b]odily injury' or 'property damage' which would not have

occurred in whole or part but for the actual, alleged or

threatened discharge, dispersal, seepage, migration, release or

escape of pollutants at any time." *Mahogany Run Condo. Ass'n*,

2004 U.S. Dist. LEXIS 17751, at *2-3.  In *Mahogany Run*, the Court

proceeded on the assumption that the policy exclusion was

ambiguous.  The fatal flaw in the Plaintiffs' argument is that

there is no such ambiguity here.  Indeed, the exclusion in the

case now before the Court could not be any clearer.  It bars "any

loss, cost or expense *arising out of* any . . . discharge,

dispersal, seepage, migration, release or escape of pollutants at

any time." (Pls.' Statement of Undisputed Facts, Exh. 1 at 18)

(emphasis supplied).  The "'arising out of' language suggests

that 'a claim need bear only an incidental relationship to the

described conduct for the exclusion to apply.'" *Gen. Star Indem.*

*Co.*, 2007 U.S. Dist. LEXIS 4444, at *12 (quoting *Nutmeg Ins. Co.*

*v. Clear Lake City Water Authority*, 229 F. Supp. 2d 668, 697

(S.D. Tex. 2002)).  Accordingly, the Court finds that the plain

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 13

language of the pollution exclusion bars coverage of the

Plaintiffs' claims.

**B.    Waiver and Estoppel**

The Plaintiffs argue that VIIGA agreed to assume their

defense in the *Antoine* Litigation and that VIIGA did not reserve

its right not to defend them.   The Plaintiffs also contend that

they relied on a letter from VIIGA's counsel[9] when they agreed to

dismiss their appeal to the Third Circuit of this Court's order

staying the Plaintiffs' litigation against Reliance.   The

Plaintiffs thus appear to raise both waiver and estoppel claims.

**1.    Waiver of the Defense of Non-Coverage**

Generally,

a liability insurer which assumes and conducts the
defense of an action brought against the insured with
knowledge of facts taking the accident or injury
outside the coverage of the policy, and without
disclaiming liability or giving notice of a reservation
of its right to deny coverage, is thereafter precluded

---

[9] During the pendency of the Plaintiffs' appeal of this
Court's order staying the litigation against Reliance, VIIGA's
counsel stated in a letter to Devcon's counsel that "coverage for
the loss is precluded by the total pollution exclusion and as
such the claims are not covered by the terms of the policy issued
by Reliance." (Defs.' Opp. to Pls.'s Mot. for Summ. J., Exh. K).
Devcon's counsel replied by letter to confirm a telephone
conversation in which "you [VIIGA's counsel] advised me that
[VIIGA] will assume the tender of the defense of V.I. Cement . .
. ." (Pls.' Statement of Undisputed Facts, Exh. 16).   VIIGA's
counsel wrote back to "confirm[] that [VIIGA] will assume the
tender of the defense from V.I. Cement . . . ." (Defs.' Opp. to
Pls.'s Mot. for Summ. J., Exh. M).

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 14

> in an action upon the policy from setting up the
> defense of noncoverage. In other words, the insurer's
> unconditional defense of an action brought against its
> insured constitutes waiver of the terms of the policy
> and an estoppel of the insurer to assert such grounds.

*Anderson v. Nat'l Chiropractic Mut. Ins. Co.*, 38 V.I. 47, 52

(Terr. Ct. 1997). "This general rule is limited by the principle

that the insurer will not be prevented from denying coverage

where it provides timely notice to the insured that its assumes

the defense of a claim under a reservation of rights." *Id.*

(citing *Aetna Life & Casualty Co. (Casualty & Surety Div.) v.

McCabe*, 556 F. Supp. 1342, 1354 (E.D. Pa. 1983)). "If this is

done, the insurer will not be precluded from its ability to later

disclaim liability." *Id.* (citing *Draft Systems, Inc. v. Alspach*,

756 F.2d 293 (3d Cir. 1985) (applying Pennsylvania law)).

"Timeliness is a two-step question. The Court looks first

to the earliest moment that the insurer should have become aware

of the substantial possibility of conflict between its own

interests and those of the insured, and then measures the time

elapsing between that time and the time of notification." *Id.*

(citing *Cozzens v. Bazzani Bldg. Co.*, 456 F. Supp. 192, 194 (E.D.

Mich. 1978)). "Moreover, the insurer must have had actual

knowledge of the nature of the claim before it will be liable for

failure to timely inform insured of its position regarding

noncoverage." *Id.*

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 15

The record in this case abounds with evidence that the
Plaintiffs were on notice that Reliance and VIIGA were reserving
their rights under the Policy.  Reliance wrote to the Plaintiffs
on May 15, 2000, stating that Reliance "reserves its rights to
deny coverage for this claim while it continues its
investigation." (Pls.' Statement of Undisputed Facts, Exh. 3).
On November 10, 2000, Reliance again wrote to the Plaintiffs,
stating that "[t]his reservation of rights letter supplements our
earlier reservation of rights letter, dated May 15, 2000,
concerning these claims." (Defs.' Mot. for Summ. J., Exh. C).
Notably, the May 15, 2000 letter came only ten days after
Reliance was notified of the potential claims.  VIIGA's answer
and counterclaim in this action reiterate this reservation of
rights, and were filed on May 28, 2002, two and one-half months
after the Plaintiffs filed their First Amended Complaint.  There
is little doubt that Reliance and VIIGA timely informed the
Plaintiffs of their reservation of rights with regard to
coverage.  The Court finds that VIIGA did not waive its right to
deny coverage.

**2.    Estoppel and the Right to Deny Coverage**

"Equitable estoppel is an affirmative defense which operates
to 'prohibit a party from subjecting another party to loss or
injury when the other party has been led by the first party to do

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 16

something which it otherwise would not have done.'" *Government*

*Guar. Fund of Fin. v. Hyatt Corp.*, 955 F. Supp. 441, 458 (D.V.I.

1997) (quoting *Billman v. Alley Assocs.*, Civ. Nos. 79-197,

81-122, at 7 (D.V.I. May 3, 1983)).  The elements of estoppel

are:

> (1)  a representation of some kind made by the party to
> be estopped which often consists of some verbal
> statement . . . that something is true or not true
> contrary to the actual facts and the estopped
> party's later claim;
> (2)  an intention or expectation that one's conduct
> shall be acted upon by, or influence, the party
> seeking estoppel;
> (3)  full knowledge by the party sought to be estopped
> of the true facts at the time of the
> representation;
> (4)  the party claiming estoppel must have, as a result
> of the other party's conduct, acted or failed to
> act so that his position was changed in such a way
> that he will suffer injury if the other party is
> not estopped, and the party claiming estoppel must
> not have had knowledge of the misrepresented
> facts.

*Id.* (internal citations omitted).

Here, again, there is no genuine issue of material fact in

dispute.  The chronology of events, though characterized

differently by the parties, is clear.  On November 8, 2002, the

Plaintiffs appealed an order of this Court to the Third Circuit.

On December 18, 2002, the Third Circuit requested responses from

the parties regarding a possible jurisdictional defect.  On

16

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 17

December 27, 2002, VIIGA filed a motion to dismiss the appeal.[10]

On May 14, 2004, in response to a communication from the

Plaintiffs, VIIGA's counsel agreed to defend the Plaintiffs.  On

August 3, 2004, the Third Circuit issued a briefing schedule for

the appeal.  In late August and early September, the parties

executed a stipulation for dismissal of the appeal without

prejudice.  At all relevant times, VIIGA or Reliance indicated a

clear intention to reserve the right to deny coverage.

The Plaintiffs argue generally that they stipulated to the

dismissal of their appeal based on VIIGA's representation that it

would defend them.  However, there is no competent evidence (1)

that VIIGA's representations regarding its assumption of the

Plaintiffs' defense were made with knowledge that such

representations would induce action; (2) that the Plaintiffs

reasonably and justifiably relied on those representations; and

(3) that the Plaintiffs have suffered injury as a result of their

reliance.  Even assuming that the Plaintiffs were induced by

VIIGA to dismiss their appeal, that dismissal in no way adversely

affected the Plaintiffs' claims against VIIGA.  Indeed, those

claims remain intact and are now before the Court.  The Court

---

[10]    The Plaintiffs appealed an interlocutory order of this
Court.  The Third Circuit advised the parties that it possibly
lacked jurisdiction because the order was not final within the
meaning of 28 U.S.C. § 1291.

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 18

thus finds that VIIGA is not estopped from denying coverage.

### IV. <u>CONCLUSION</u>

Because there are no material facts in dispute and VIIGA is entitled to judgment as a matter of law, the Court will grant VIIGA's motion for summary judgment and deny the Plaintiffs' motion for summary judgment. An appropriate judgment follows.


**Dated: October 23, 2007**              S\_____
                                          **CURTIS V. GÓMEZ**
                                           **Chief Judge**



**Copies to:**        Hon. Geoffrey W. Barnard
                      Maria T. Hodge, Esq.
                      Denise Francois, Esq.
                      Douglas L. Capdeville, Esq.
                      Richard H. Hunter, Esq.
                      Carol C. Jackson
                      Olga Schneider
                      Lydia Trotman
                      Claudette Donovan
                      Gregory F. Laufer

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |  |
|---|---|---|
| DEVCON INTERNATIONAL CORPORATION, V.I. CEMENT & BUILDING PRODUCTS, INC., d/b/a MARK 21 INDUSTRIES, INC., d/b/a CONTROLLED CONCRETE PRODUCTS, INC., d/b/a SPRINGFIELD CRUSHER., | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civil No. 2001-201 |
| v. | ) ) | |
| RELIANCE INSURANCE COMPANY and THE VIRGIN ISLANDS INSURANCE GUARANTY ASSOCIATION, | ) ) ) ) | |
| Defendants. | ) ) | |

ATTORNEYS:

Maria T. Hodge, Esq.
Denise Francois, Esq.
St. Thomas, U.S.V.I.
    For the plaintiffs.

Douglas L. Capdeville, Esq.
St. Croix, U.S.V.I.
    For defendant Reliance Insurance Company.

Richard H. Hunter, Esq.
St. Croix, U.S.V.I.
    For defendant The Virgin Islands Insurance Guaranty
    Association.

## JUDGMENT

GÓMEZ, C.J.

Before the Court are motions for summary judgment by the

plaintiffs, Devcon International Corporation and V.I. Cement &

*Devcon v. Reliance*
Civil No. 2001-201
Judgment
Page 2

Building Products, Inc. (the "Plaintiffs"), and defendant the

Virgin Islands Insurance Guaranty Association ("VIIGA"). For the

reasons stated in the accompanying memorandum of even date, it is

hereby

ORDERED that VIIGA's motion is GRANTED; it is further

ORDERED that the Plaintiffs' motion is DENIED; it is further

ORDERED that summary judgment shall be entered in favor of

VIIGA; and it is further

ORDERED that the Clerk of the Court shall close this matter.


Dated: October 23, 2007          S_____

                                    CURTIS V. GÓMEZ
                                    Chief Judge


Copies to:     Hon. Geoffrey W. Barnard
               Maria T. Hodge, Esq.
               Denise Francois, Esq.
               Douglas L. Capdeville, Esq.
               Richard H. Hunter, Esq.
               Carol C. Jackson
               Olga Schneider
               Lydia Trotman
               Claudette Donovan
               Gregory F. Laufer

#108

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

DEVCON INTERNATIONAL CORPORATION,    )
V.I. CEMENT & BUILDING PRODUCTS,     )
INC., d/b/a MARK 21 INDUSTRIES,      )
INC., d/b/a CONTROLLED CONCRETE      )    Civil No. 2001-201
PRODUCTS, INC., d/b/a SPRINGFIELD    )
CRUSHER,                             )
                                     )
              Plaintiffs,            )
                                     )
       v.                            )
                                     )
RELIANCE INSURANCE COMPANY and THE   )
VIRGIN ISLANDS INSURANCE GUARANTY    )
ASSOCIATION,                         )
                                     )
                                     )
              Defendants.            )
                                     )

ATTORNEYS:

James L. Hymes, III, Esq.
Maria T. Hodge, Esq.
Denise Francois, Esq.
St. Thomas, U.S.V.I.
     For the plaintiffs.

Douglas L. Capdeville, Esq.
St. Croix, U.S.V.I.
     For defendant Reliance Insurance Company.

Richard H. Hunter, Esq.
St. Croix, U.S.V.I.
     For defendant The Virgin Islands Insurance Guaranty
     Association.

### MEMORANDUM OPINION

GÓMEZ, C.J.

     Before the Court is the motion of the plaintiffs, Devcon

International Corporation ("Devcon") and V.I. Cement & Building

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 2

Products, Inc. ("V.I. Cement") (together, the "Plaintiffs"), for

reconsideration of this Court's grant of summary judgment in

favor of defendant the Virgin Islands Insurance Guaranty

Association ("VIIGA").

## I. FACTUAL AND PROCEDURAL BACKGROUND

Devcon is the parent company of V.I. Cement.  In September

1999, V.I. Cement entered into a contract with the Virgin Islands

Port Authority ("VIPA") to perform work on the "Runway Extension

Construction Project" (the "Project") at the Henry E. Rohlsen

Airport located on St. Croix, U.S. Virgin Islands.  V.I. Cement

commenced work on the Project in October, 1999.

In December, 1999, residents in the vicinity of the Project

began complaining to VIPA of excessive dust in the area.  In

response to the complaints, the Virgin Islands Department of

Planning and Natural Resources issued an order for remedial

action to be taken.  Later that month, the residents filed claims

with the United States Environmental Projection Agency,

complaining that the excessive dust was causing physical injury.

VIPA settled some of the claims of the residents.  Pursuant

to that settlement, VIPA agreed to pay the relocation expenses

for those residents.  V.I. Cement bore some of the relocation

costs.  Devcon sought reimbursement from its insurer, Reliance

Insurance Company ("Reliance"), for the relocation expenses paid

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 3

by V.I. Cement. Reliance concluded that Devcon's request was excluded from coverage by an insurance policy (the "Policy" or the "Insurance Policy") that Devcon had purchased from Reliance. Consequently, Reliance refused to compensate Devcon.

In April 2001, the residents filed suit (the "*Antoine* Litigation")[1] against VIPA and V.I. Cement, alleging, *inter alia*, that the excessive dust from the Project had resulted in physical and psychological harm as well as property damage. The *Antoine* Litigation is still pending.

The Plaintiffs sought indemnification from Reliance for any liability that they might incur from the *Antoine* Litigation. Reliance declined. As a result, on October 25, 2001, the Plaintiffs filed this declaratory action to have the Court determine the scope of coverage under the Policy.

On October 3, 2001, Reliance was adjudicated to be insolvent by an Order of Liquidation of the Commonwealth Court of Pennsylvania.[2] Thereafter, the Plaintiffs filed their First Amended Complaint, adding VIIGA, a Virgin Islands nonprofit

---

[1] *Antoine et. al. v. V.I. Port Authority et. al.*, Civil No. 2001-63 (D.V.I. filed April 9, 2001).

[2] *M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania v. Reliance Insurance Company*, No. 269 M.D. 2001.

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 4

uncorporated legal entity,[3] as a defendant.

The Plaintiffs and VIIGA both filed motions for summary judgment. The Plaintiffs' argued that claims from the *Antoine Litigation* were covered by the Policy. VIIGA argued that those claims were excluded by the Policy's coverage exclusion provisions. After reviewing the Policy and finding that its exclusion provisions unambiguously barred coverage of the *Antoine Litigation* claims, the Court denied the Plaintiffs' motion and granted VIIGA's motion. The Plaintiffs now seek reconsideration of that ruling.

## II. ANALYSIS

Motions for reconsideration are governed by Local Rule of Civil Procedure 7.4, which provides:

> A party may file a motion asking a judge or magistrate judge to reconsider an order or decision made by that judge or magistrate judge. Such motion shall be filed within ten (10) days after the entry of the order or decision unless the time is extended by the court. . . . A motion to reconsider shall be based on: (1) intervening change in controlling law; (2) availability of new evidence, or; (3) the need to correct clear error or prevent manifest injustice.

Local R. Civ. P. 7.4 (2000). The purpose of a motion for

---

[3] VIIGA exists pursuant to Chapter 10, Title 22 of the Virgin Islands Code. 22 V.I.C. § 237(a) provides that when an insurer becomes insolvent, VIIGA is deemed the insurer to the extent of the insurer's obligations, rights and duties on covered claims.

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 5

reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Such motions are not substitutes for appeals, and are not to be used as "a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not." *Bostic v. AT&T of the V.I.*, 312 F. Supp. 2d 731, 733 (D.V.I. 2004). As the *Bostic* court noted, ". . . Local Rule 7.4 affirms the common understanding that reconsideration is an 'extraordinary' remedy not to be sought reflexively or used as a substitute for appeal." *Id.*

Here, the Plaintiffs do not explicitly assert an intervening change in controlling law or the availability of new evidence. To the extent the Plaintiffs attempt to assert the need to correct clear error or prevent manifest injustice, the Court finds the Plaintiffs' arguments unavailing.

The thrust of the Plaintiffs' argument in this motion is that the Court should have employed a "reasonable expectations" analysis in deciding whether the Policy covered the *Antoine Litigation* claims. Under that analysis, courts must conduct a two-part test:

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 6

> First, [courts] must determine if any patent ambiguity
> exists in the policy language such that coverage must
> be provided. Second, if such an ambiguity does not
> exist, [courts] must determine, were coverage denied,
> whether the policy language is insufficiently clear
> such that the average policyholder would be deprived of
> a reasonable expectation of coverage."

*Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co.*, 989 F.2d

635, 638 (3d Cir. 1991) (applying New Jersey law).

The Plaintiffs assert that "the majority of jurisdictions,

including jurisdictions such as the Virgin Islands . . . ., apply

the reasonable expectations doctrine in insurance coverage cases

. . . ." (Pls.' Mot. for Reconsideration of Summ. J. Order and

Amendment of J. 4.)  In support of this assertion, the Plaintiffs

place great reliance on the Third Circuit Court of Appeals'

opinion in *Amerada Hess Corp. v. Zurich Ins. Co.*, 29 Fed. Appx.

800 (3d Cir. 2002) (not precedential).  That reliance is

misplaced.

In *Amerada Hess*, the Third Circuit reversed a decision of

this Court granting summary judgment for the defendant insurer.

In holding that summary judgment should have been granted for the

plaintiffs insured, the Third Circuit reasoned that the

plaintiffs' and defendant's "conflicting, yet 'compelling,'

interpretations" were evidence of an "essential ambiguity" in the

insurance policy. *Amerada Hess Corp.*, 29 Fed. Appx. at 805.  The

Third Circuit further found that

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 7

> [w]here there is more than one reasonable reading of a
> policy provision . . . that provision must be construed
> against the insurance company which has drafted it.
> Moreover, as we have previously stated in interpreting
> an insurance policy under Virgin Islands law, any
> ambiguity in an insurance policy is to be construed
> against the insurer, and in a manner which is more
> favorable to coverage.

*Id.* (internal citations and quotations omitted).   Thus, the Third

Circuit found that

> under Virgin Islands law, if the insured *proffers a*
> *reasonable interpretation of an ambiguous term*, then
> that term controls and the insured is entitled to
> judgment as a matter of law so long as the undisputed
> facts fall within the purview of the meaning offered by
> the insured.

*Id.* (internal quotations omitted; emphasis supplied).   The

reasoning in *Amerada Hess* is consistent with the Third Circuit's

instruction that "when interpreting an insurance policy, courts

should give the policy's words their plain, ordinary meaning."

*See, e.g., Colliers Lanard & Axilbund v. Lloyds of London*, 458

F.3d 231, 236 (3d Cir. 2006) (applying New Jersey law).   That

reasoning finds further support in the Third Circuit's guidance

that courts should go beyond the plain meaning of an insurance

policy only if "the contractual language is ambiguous." *See,*

*e.g., Nationwide Mut. Ins. Co. v. Chiao*, 186 Fed. Appx. 181, 184

(3d Cir. 2006) (applying Pennsylvania law; not precedential); *see*

*also Essex Ins. Co. v. Starlight Mgmt. Co.*, 198 Fed. Appx. 179,

183 (3d Cir. 2006) ("The proper focus regarding issues of

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 8

coverage under insurance contracts is the reasonable expectation of the insured. That expectation is governed by the unambiguous language of the insurance policy.") (applying Pennsylvania law; internal citations and quotations omitted; not precedential).

In this case, however, the fatal flaw in the Plaintiffs' argument is that this Court specifically held that "there is no . . . ambiguity here." *Devcon Int'l Corp. v. Reliance Ins. Co.*, Civ. No. 2001-201, 2007 U.S. Dist. LEXIS 78672, at *13 (D.V.I. Oct. 23, 2007). The Court further found that while the "[the *Antoine* Litigation] claims clearly fall within the scope of the Policy[,] . . . the plain language of the pollution exclusion bars coverage of the Plaintiffs' claims." *Id.* at *10, *13. Thus, because the Policy unambiguously excluded coverage for the *Antoine* Litigation claims, there was no need to consider the Plaintiffs' reasonable expectations of coverage. *See, e.g., Hospitality Pac, Inc. v. First Occupational Ctr.*, No. 04-4562, 2006 U.S. Dist. LEXIS 1152, at *16-17 (D.N.J. Jan. 13, 2006) ("In light of the Court's finding that the 'personal property' term of the policy unambiguously refers to all property other than real estate, the Court can see no support for the proposition that the parties intended the term to mean anything else."); *Hughes v. State Farm Fire & Cas. Co.*, Civ. No. 2005-357, 2007 U.S. Dist. LEXIS 71962, at *33 (W.D. Pa. Sept. 27, 2007) (not looking to the

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 9

parties' reasonable expectations where "[c]overage for damages resulting from a sinkhole [was] unambiguously precluded by the earth movement exclusion"); *Seidenberg v. Mutual Life Ins. Co.*, 949 F. Supp. 269, 280 (D.N.J. 1996) ("The language in issue is not unclear and, therefore, does not justify controverting the plain language of the Insurance Policy. Nor are there 'hidden or unfair reservations' in the Waiver of Premium provision that should be ignored because they are contrary to the reasonable expectation of the insured."), *aff'd* 135 F.3d 766 (3d Cir. 1997).

Given the foregoing, the Plaintiffs have not demonstrated that this Court's October 23, 2007 decision must be revisited due to a clear error of law, to prevent manifest injustice, or for any of the other reasons set forth in Local Rule of Civil Procedure 7.4. As such, the Plaintiffs' motion will be denied. An appropriate order follows.

Dated: November 9, 2007          S_____
                                        CURTIS V. GÓMEZ
                                        Chief Judge


Copies to:     Hon. Geoffrey W. Barnard
               James L. Hymes, III, Esq.
               Maria T. Hodge, Esq.
               Denise Francois, Esq.
               Douglas L. Capdeville, Esq.

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion
Page 10

        Richard H. Hunter, Esq.
        Carol C. Jackson
        Olga Schneider
        Lydia Trotman
        Claudette Donovan
        Gregory F. Laufer

*# 109*

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

DEVCON INTERNATIONAL CORPORATION,       )
V.I. CEMENT & BUILDING PRODUCTS,        )
INC., d/b/a MARK 21 INDUSTRIES,         )
INC., d/b/a CONTROLLED CONCRETE         )    Civil No. 2001-201
PRODUCTS, INC., d/b/a SPRINGFIELD       )
CRUSHER,                                )
                                        )
              Plaintiffs,               )
                                        )
        v.                              )
                                        )
RELIANCE INSURANCE COMPANY and THE      )
VIRGIN ISLANDS INSURANCE GUARANTY       )
ASSOCIATION,                            )
                                        )
              Defendants.               )
_____     )

ATTORNEYS:

James L. Hymes, III, Esq.
Maria T. Hodge, Esq.
Denise Francois, Esq.
St. Thomas, U.S.V.I.
     *For the plaintiffs.*

Douglas L. Capdeville, Esq.
St. Croix, U.S.V.I.
     *For defendant Reliance Insurance Company.*

Richard H. Hunter, Esq.
St. Croix, U.S.V.I.
     *For defendant The Virgin Islands Insurance Guaranty
     Association.*

### ORDER

GÓMEZ, C.J.

     Before the Court is the motion of the plaintiffs, Devcon

International Corporation and V.I. Cement & Building Products,

*Devcon v. Reliance*
Civil No. 2001-201
Order
Page 2

Inc., for reconsideration of this Court's grant of summary

judgment in favor of defendant the Virgin Islands Insurance

Guaranty Association.   For the reasons more fully stated in the

Memorandum Opinion of even date, it is hereby

ORDERED that the motion is DENIED.

Dated: November 9, 2007                 S_____
                                            CURTIS V. GÓMEZ
                                            Chief Judge

Copies to:       Hon. Geoffrey W. Barnard
                 James L. Hymes, III, Esq.
                 Maria T. Hodge, Esq.
                 Denise Francois, Esq.
                 Douglas L. Capdeville, Esq.
                 Richard H. Hunter, Esq.
                 Carol C. Jackson
                 Olga Schneider
                 Lydia Trotman
                 Claudette Donovan
                 Gregory F. Laufer

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

DEVCON INTERNATIONAL CORPORATION, )
V.I. CEMENT & BUILDING PRODUCTS, )
INC., d/b/a MARK 21 INDUSTRIES, )
INC., d/b/a CONTROLLED CONCRETE )    Civil No. 2001-201
PRODUCTS, INC., d/b/a SPRINGFIELD )
CRUSHER, )
)
        Plaintiffs, )
)
        v. )
)
RELIANCE INSURANCE COMPANY and THE )
VIRGIN ISLANDS INSURANCE GUARANTY )
ASSOCIATION, )
)
        Defendants. )
_____ )

ATTORNEYS:

James L. Hymes, III, Esq.
Maria T. Hodge, Esq.
Denise Francois, Esq.
St. Thomas, U.S.V.I.
    For the plaintiffs.

Douglas L. Capdeville, Esq.
St. Croix, U.S.V.I.
    For defendant Reliance Insurance Company.

Richard H. Hunter, Esq.
St. Croix, U.S.V.I.
    For defendant The Virgin Islands Insurance Guaranty
    Association.

<u>MEMORANDUM OPINION AND ORDER</u>

GÓMEZ, C.J.

    Before the Court is the motion of defendant the Virgin

Islands Insurance Guaranty Association ("VIIGA") to certify a

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 2

final judgment for fewer than all parties pursuant to Rule 54(b)

of the Federal Rules of Civil Procedure.

This action was initiated by plaintiffs Devcon International

Corporation ("Devcon") and V.I. Cement & Building Products, Inc.

("V.I. Cement") (together, the "Plaintiffs") against their

insurer, defendant Reliance Insurance Company ("Reliance").  The

Plaintiffs sought a declaratory judgment and alleged breach of

contract and misrepresentation.  After the commencement of this

action, Reliance was adjudicated to be insolvent by an Order of

Liquidation of the Commonwealth Court of Pennsylvania.[1]

Thereafter, the Plaintiffs filed their First Amended Complaint,

adding as a defendant the Virgin Islands Insurance Guaranty

Association ("VIIGA"), a Virgin Islands nonprofit unincorporated

legal entity.[2]  The First Amended Complaint added a claim for

declaratory relief against VIIGA.

Pursuant to the Order of Liquidation, this Court granted

Reliance's motion for an indefinite stay of this action.[3]  That

---

[1]  *M. Diane Koken, Insurance Commissioner of the
Commonwealth of Pennsylvania v. Reliance Insurance Company*, No.
269 M.D. 2001.

[2]  VIIGA exists pursuant to Chapter 10, Title 22 of the
Virgin Islands Code.  22 V.I.C. § 237(a) provides that when an
insurer becomes insolvent, VIIGA is deemed the insurer to the
extent of the insurer's obligations, rights and duties on covered
claims.

[3]  (*See* Order, May 17, 2002.)

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 3

stay is still in effect.

The Plaintiffs sought a declaratory judgment defining the

scope and nature of VIIGA's responsibilities to the Plaintiffs

under the Plaintiffs' insurance policy for liabilities alleged in

other litigation (the "*Antoine* Litigation"). Both parties moved

for summary judgment. The Court denied the Plaintiffs' motion

and granted VIIGA's motion.[4] The Plaintiffs thereafter moved for

reconsideration of the Court's summary judgment opinion. That

motion was denied. VIIGA now moves to certify the Court's

summary judgment pursuant to Rule 54(b).

> Rule 54(b) provides:
>
> When an action presents more than one claim for relief
> — whether as a claim, counterclaim, crossclaim, or
> third-party claim — or when multiple parties are
> involved, the court may direct entry of a final
> judgment as to one or more, but fewer than all, claims
> or parties only if the court expressly determines that
> there is no just reason for delay. Otherwise, any order
> or other decision, however designated, that adjudicates
> fewer than all the claims or the rights and liabilities
> of fewer than all the parties does not end the action
> as to any of the claims or parties and may be revised
> at any time before the entry of a judgment adjudicating
> all the claims and all the parties' rights and
> liabilities.

FED. R. CIV. P. 54(b).

VIIGA argues that because the Court's summary judgment is as

to VIIGA, and does not include Reliance, "the action is not yet

---

[4]    (*See* Mem. Op. and Order, Oct. 23, 2007.)

35

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 4

terminated and judgment has not yet been properly entered in

favor of [VIIGA]." (Mot. to Certify Final J. for Less Than All

Parties Pursuant to Rule 54(b) 3.")

The Plaintiffs correctly assert that under most

circumstances their notice of appeal to the Third Circuit Court

of Appeals would divest this Court of jurisdiction. *See In re*

*Horn*, 185 Fed. Appx. 199, 202 (3d Cir. 2006). However, the Court

is persuaded that it retains jurisdiction to certify a ruling

under Rule 54(b) despite the filing of a notice of appeal. *See*,

*e.g.*, *Sinaloa Lake Owners Ass'n v. California Div. of Safety of*

*Dams*, Civ. No. 91-56352, 1993 U.S. App. LEXIS 11958, at *3-4 (9th

Cir. May 17, 1993) (holding "that the district court retained the

power to issue a Rule 54(b) certification despite the intervening

filing of the notice of appeal"); *United States v. Hitchmon*, 602

F.2d 689, 693 (5th Cir. 1979) ("We are persuaded that filing a

notice of appeal from a nonappealable order should not divest the

district court of jurisdiction . . . .").

Rule 54(b) "attempts to strike a balance between the

undesirability of piecemeal appeals and the need for making

review available at a time that best serves the needs of the

parties." *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521

F.2d 360, 363 (3d Cir. 1975); *see also Aetna Insurance Co. v.*

*Newton*, 398 F.2d 729, 734 (3d Cir. 1968). The Supreme Court has

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 5

cautioned that "[f]inal judgment under this rule is not to be

entered routinely," *Curtiss-Wright Corp. v. General Elec. Co.*,

446 U.S. 1, 10 (1980), and that the court must exercise its

discretion "in the interests of sound judicial administration."

*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956).

In order to enter final judgment, the court must first

determine that it is "dealing with a final judgment."

*Curtiss-Wright Corp.*, 446 U.S. at 7. It must be a "judgment" in

the sense that it is a decision upon a cognizable claim for

relief, and it must be "final" in the sense that it is the

"ultimate disposition of an individual claim entered in the

course of a multiple claims action." *Id.* Next, the court must

determine whether there is any reason for delaying entry of final

judgment. The court must balance the interests of "sound

judicial administration" and the equities involved, i.e., justice

to the litigants. *Curtiss-Wright*, 446 U.S. at 2; *see also Carter

v. Philadelphia*, 181 F.3d 339, 346 (3d Cir. 1999); *Waldorf v.

Shuta*, 142 F.3d 601, 608 (3d Cir. 1998).

The Third Circuit has endorsed the Second Circuit's guidance

as to Rule 54(b) certifications:

> We suggest to the district courts that in the future it
> would be helpful to us in reviewing the exercise of
> discretion in granting a Rule 54(b) certificate if the
> court, rather than incorporating in the certificate
> [footnote omitted] the conclusory language of Rule

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 6

> 54(b), would make a brief reasoned statement in support
> of its determination that, 'there is no just reason for
> delay' and its express direction for 'the entry of a
> final judgment as to one or more but fewer than all of
> the claims or parties' where the justification for the
> certificate is not apparent. . . .

*Allis-Chalmers Corp.*, 521 F.2d at 364 (quoting *Gumer v. Shearson,*

*Hammill & Co., Inc.*, 516 F.2d 283, 286 (2d Cir. 1974)). Based on

this reasoning, the Third Circuit has listed the following

factors for a district court to evaluate in ascertaining the

propriety of a Rule 54(b) certification:

> (1) the relationship between the adjudicated and
> unadjudicated claims; (2) the possibility that the need
> for review might or might not be mooted by future
> developments in the district court; (3) the possibility
> that the reviewing court might be obliged to consider
> the same issue a second time; (4) the presence or
> absence of a claim or counterclaim which could result
> in set-off against the judgment sought to be made
> final; 10 (5) miscellaneous factors such as delay,
> economic and solvency considerations, shortening the
> time of trial, frivolity of competing claims, expense,
> and the like.

*Id.*

The Court finds that the circumstances of this case support

certification of the Court's summary judgment as final under Rule

54(b). The Court's summary judgment is a "judgment" in the sense

that it is a decision on various cognizable claims brought by the

Plaintiffs for relief. It is "final" in the sense that it is an

ultimate disposition of those claims, thus "end[ing] the

litigation on the merits and leav[ing] nothing for the court to

38

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 7

do but execute the judgment." *See*, *e.g.*, *Gulfstream Aerospace*
*Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275 (1988) (internal
quotations omitted).

Furthermore, there is no just reason for delaying the entry
of judgment with respect to the claims against VIIGA and Reliance
because there are no further claims that remain to be
adjudicated. In other words, "no appellate court would have to
decide the same issues more than once even if there were
subsequent appeals," since the plain language of the insurance
policy between the Plaintiffs and Reliance determined the result
of the Court's ruling. Thus, potential future appeals in this
matter regarding any other claims will not involve similar legal
issues. *See*, *e.g.*, *Am. Equip. Leasing v. McGee's Crane Rental*,
Civ. No. 01-4783, 2002 U.S. Dist. LEXIS 24727, at *29 (E.D. Pa.
Dec. 12, 2002).

Specifically applying the *Allis-Chalmers* criteria to this
matter shows that (1) the declaratory judgment sought by the
Plaintiffs against Reliance is exactly the same as that against
VIIGA; (2) the other two claims brought by the Plaintiffs against
Reliance - breach of contract and misrepresentation - are legally
and factually separable from the declaratory judgment counts; (3)
disposition on appeal of the matters adjudicated on summary
judgment will eliminate all coverage issues as to the Plaintiffs

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 8

and will obviate the need for this Court to address this matter

again; (4) there is little possibility that a reviewing court

will have to hear this matter again because VIIGA's obligations

under the insurance policy are identical to those of Reliance;

(5) since VIIGA's favorable summary judgement motion fully

removed it from any liability in the *Antoine* Litigation, no

possibility exists that could result in a setoff against its

liability or lack thereof; and (6) finally, a determination of

the propriety of this Court's summary judgment decision will

likely serve to clarify the Plaintiffs' liability in the *Antoine*

Litigation. *See, e.g., Chicago Ins. Co. v. Sampson*, 97-5514, 1999

U.S. Dist. LEXIS 13991, at *3-5 (E.D. Pa. Sept. 15, 1999), *aff'd*

230 F.3d 1348 (3d Cir. 2000); *Metro Transp. Co. v. Underwriters*

*at Lloyd's of London*, Civ. No. 88-3325, 1990 U.S. Dist. LEXIS

8438, at *3-4 (E.D. Pa. July 3, 1990), *aff'd* 912 F.2d 672 (3d

Cir. 1990).

Accordingly, the Court finds the entry of judgment on the

claims between the Plaintiffs and VIIGA and Reliance to be in the

interest of sound judicial administration.

For the reasons stated above, it is hereby

**ORDERED** that the Court's October 23, 2007 Memorandum Opinion

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 9

and Judgment are entered as a final judgment pursuant to Rule

54(b).


Dated: December 21, 2007                    S_____

                                                    **CURTIS V. GÓMEZ**
                                                    **Chief Judge**



Copies to:          Hon. Geoffrey W. Barnard
                    James L. Hymes, III, Esq.
                    Maria T. Hodge, Esq.
                    Denise Francois, Esq.
                    Douglas L. Capdeville, Esq.
                    Richard H. Hunter, Esq.
                    Carol C. Jackson
                    Olga Schneider
                    Lydia Trotman
                    Claudette Donovan
                    Gregory F. Laufer

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

DEVCON INTERNATIONAL CORPORATION, )
V.I. CEMENT & BUILDING PRODUCTS, )
INC., d/b/a MARK 21 INDUSTRIES, )
INC., d/b/a CONTROLLED CONCRETE )    Civil No. 2001-201
PRODUCTS, INC., d/b/a SPRINGFIELD )
CRUSHER, )
)
              Plaintiffs, )
)
            v. )
)
RELIANCE INSURANCE COMPANY and THE )
VIRGIN ISLANDS INSURANCE GUARANTY )
ASSOCIATION, )
)
)
           Defendants. )
_____ )

ATTORNEYS:

James L. Hymes, III, Esq.
Maria T. Hodge, Esq.
Denise Francois, Esq.
St. Thomas, U.S.V.I.
    *For the plaintiffs.*

Douglas L. Capdeville, Esq.
St. Croix, U.S.V.I.
    *For defendant Reliance Insurance Company.*

Richard H. Hunter, Esq.
St. Croix, U.S.V.I.
    *For defendant The Virgin Islands Insurance Guaranty
    Association.*

<u>MEMORANDUM OPINION AND ORDER</u>

GÓMEZ, C.J.

    Before the Court is the motion of defendant the Virgin

Islands Insurance Guaranty Association ("VIIGA") for an award of

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 2

attorneys' fees.

This action was initiated by plaintiffs Devcon International
Corporation ("Devcon") and V.I. Cement & Building Products, Inc.
("V.I. Cement") (together, the "Plaintiffs") against their
insurer, defendant Reliance Insurance Company ("Reliance").
After the commencement of this action, Reliance was adjudicated
to be insolvent by an Order of Liquidation of the Commonwealth
Court of Pennsylvania.[1]  Thereafter, the Plaintiffs filed their
First Amended Complaint, adding as a defendant the Virgin Islands
Insurance Guaranty Association ("VIIGA"), a Virgin Islands
nonprofit unincorporated legal entity.[2]  Pursuant to the Order of
Liquidation, this Court granted Reliance's motion for an
indefinite stay of this action.[3]  That stay is still in effect.

The Plaintiffs sought a declaratory judgment defining the
scope and nature of VIIGA's responsibilities to the Plaintiffs
under the Plaintiffs' insurance policy for liabilities alleged in
other litigation.  Both parties moved for summary judgment.  The

--------

[1]  *M. Diane Koken, Insurance Commissioner of the
Commonwealth of Pennsylvania v. Reliance Insurance Company*, No.
269 M.D. 2001.

[2]  VIIGA exists pursuant to Chapter 10, Title 22 of the
Virgin Islands Code.  22 V.I.C. § 237(a) provides that when an
insurer becomes insolvent, VIIGA is deemed the insurer to the
extent of the insurer's obligations, rights and duties on covered
claims.

[3]  (*See* Order, May 17, 2002.)

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 3

Court denied the Plaintiffs' motion and granted VIIGA's motion.[4]

The Plaintiffs thereafter moved for reconsideration of the

Court's summary judgment opinion. That motion was denied.[5]

VIIGA now seeks $37,620 in attorneys' fees.

The Plaintiffs raise several arguments against the award of

attorneys' fees.[6] The Plaintiffs mainly argue that the Court

---

[4]   (*See* Mem. Op. and Order, Oct. 23, 2007.)

[5]   (*See* Mem. Op., Nov. 9, 2007.)

[6]   Two of those arguments refer to the Court's discretion
whether to award attorneys' fees, and how much to award.  The
Plaintiffs also argue that VIIGA's motion for attorneys' fees is
untimely.  In support of that assertion, the Plaintiffs rely on
Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure.  Rule
54(d)(2)(B) provides, in pertinent part, that "the motion [for
attorneys' fees] must . . . be filed no later than 14 days after
the entry of judgment." FED. R. CIV. P. 54(d)(2)(B).  The
Plaintiffs assert that because the Court granted summary judgment
on October 23, 2007, VIIGA was obligated to file its motion no
later than November 6, 2007.  VIIGA actually filed its motion on
November 19, 2007.  The Court finds that assertion unconvincing.
Rule 54(d)(2)(B) makes "the entry of judgment" the triggering
event for the 14-day deadline.  Rule 54(a) defines "judgment" as
"any order from which an appeal lies." FED. R. CIV. P. 54(a).
Federal appellate jurisdiction requires "a decision by the
District Court that 'ends the litigation on the merits and leaves
nothing for the court to do but execute the judgment.'" *Coopers &
Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (quoting *Catlin v.
United States*, 324 U.S. 229, 233 (1945)).  The Advisory Committee
Notes to Rule 54(b) indicate that the deadline for filing a
motion for attorney's fees is "fourteen days after final
judgment. . . . One purpose of this provision is to assure that
the opposing party is informed of the claim before the time for
appeal has lapsed." FED. R. CIV. P. 54 advisory committee's note
(1993 amendments).  On December 21, 2007, the Court certified its
October 23, 2007 ruling pursuant to Rule 54(b) as a final
judgment, as contemplated by Rule 54(d)(2)(B).  VIIGA filed a
renewed motion for attorneys' fees on December 27, 2007.  VIIGA's

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 4

should stay a determination on VIIGA's motion pending the
Plaintiffs' appeal to the Third Circuit. That argument is
unpersuasive. The Plaintiffs' appeal does not divest this Court
of jurisdiction to hear VIIGA's motion. *See, e.g., West v. Keve,*
721 F.2d 91, 95 n.5 (3d Cir. 1983) ("Should the district court
prefer to consider a fee application during a pending appeal on
the predicate case, the district court is not divested of
jurisdiction to determine the application."). Moreover, the
weight of authority is that the usual course is for the Court to
consider attorneys' fees promptly after the merits decision
rather than stay a motion for attorneys' fees until resolution of
the appeal. *See* Fed. R. Civ. P. 54 advisory committee's note ("In
many nonjury cases the court will want to consider attorneys' fee
issues immediately after rendering its judgment on the merits of
the case . . . ."); *see also In re Unisys Corp. Retiree Med.*
*Benefits Erisa Litig. Adair,* Civ. No. 03-3924, 2007 U.S. Dist.
LEXIS 89317, at *5-6 (E.D. Pa. 2007) (noting that "a number of
courts have found that a pending appeal, standing alone, is
insufficient reason to postpone a fee decision for an indefinite
period"). Given the rather long pendency of this matter, the
Court is not persuaded that a stay is warranted.

Having concluded that the Plaintiffs are not entitled to a

_____

motion is thus not untimely.

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 5

stay, the Court will address whether an award of attorneys' fees

is appropriate in this matter.

> Title 5, section 541 of the Virgin Islands Code provides:
>
> Costs which may be allowed in a civil action include:
>
> (1) Fees of officers, witnesses, and jurors;
> (2) Necessary expenses of taking depositions which were
> reasonably necessary in the action;
> (3) Expenses of publication of the summons or notices,
> and the postage when they are served by mail;
> (4) Compensation of a master as provided in Rule 53 of
> the Federal Rules of Civil Procedure;
> (5) Necessary expense of copying any public record,
> book, or document used as evidence in the trial; and
> (6) Attorney's fees as provided in subsection (b) of
> this section.

V.I. CODE ANN. tit. 5, § 541(a) (1986). The statute further

provides: "there shall be allowed to the prevailing party in the

judgment such sums as the court in its discretion may fix by way

of indemnity for his attorney's fees in maintaining the action or

defenses thereto . . . ." *Id.* at (b).

To determine a fair and reasonable award of attorneys' fees,

the Court considers factors including the time and labor

involved, skill required, customary charges for similar services,

benefits obtained from the service and the certainty of

compensation. *Lempert v. Singer*, Civ. No. 1990-200, 1993 U.S.

Dist. LEXIS 19923, at *5 (D.V.I. December 30, 1993; *see also*

*Morcher v. Nash*, 32 F. Supp.2d 239, 241 (D.V.I. 1998).

Reasonable attorneys' fees may include charges for work that was

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 6

"useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986); *see also Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993) (noting that reasonable attorneys' fees may include charges for measures necessary to enforce district court judgments as well as other charges "reasonably expended" to advance the litigation).

Applying the standard outlined above, the Court finds that most of the $37,620 in attorneys' fees claimed by VIIGA was reasonably expended. However, the Court also finds that several items were not reasonable.

For instance, VIIGA's request for reimbursement for undetailed itemizations is problematic. Such entries "are so vague as to prevent meaningful judicial review." *Morcher*, 32 F. Supp. 2d at 242-243. Moreover, "these undifferentiated entries hinder the Court in determining whether the time spent on each of the listed activities was reasonable[.]" *Id.* at 243. At least part of those entries is unreasonable.

Moreover, VIIGA requests reimbursement for time anticipated to defend this fee petition. However, attorneys' fees are awarded on the basis of time spent on the case, not that which is anticipated and may not be realized.

47

*Devcon v. Reliance*
Civil No. 2001-201
Memorandum Opinion and Order
Page 7

In sum, the Court finds that $6,543.75 of the fees requested is unreasonable and must be deducted from VIIGA's requested reimbursement.    Accordingly, it is hereby

**ORDERED** that the Plaintiffs shall reimburse VIIGA for attorneys' fees and costs in the amount of $31,076.25.

**Dated: January 2, 2008**                S\_____
                                                        **CURTIS V. GÓMEZ**
                                                        **Chief Judge**

Copies to:              James L. Hymes, III, Esq.
                              Maria T. Hodge, Esq.
                              Denise Francois, Esq.
                              Douglas L. Capdeville, Esq.
                              Richard H. Hunter, Esq.

*Devcon*

**Appeal**

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | |
|---|---|
| DEVCON INTERNATIONAL CORPORATION, )<br>V.I. CEMENT & BUILDING PRODUCTS, )<br>INC., d/b/a MARK 21 INDUSTRIES, )<br>INC., d/b/a CONTROLLED CONCRETE )<br>PRODUCTS, INC., d/b/a SPRINGFIELD )<br>CRUSHER, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>RELIANCE INSURANCE COMPANY and THE )<br>VIRGIN ISLANDS GUARANTEE )<br>ASSOCIATION )<br> )<br>Defendants. )<br> ) | Civil No. 2001-201<br>USCA No. 07-4602 |

### AMENDED NOTICE OF APPEAL

Devcon International Corporation and V.I. Cement & Building Products, Inc.,
Plaintiffs/Appellants, appeal to the United States Court of Appeals for the Third Circuit from the
Final Judgment of the District Court of the Virgin Islands originally entered on October 23, 2007
(DE 104 and 105), and certified by the District Court as a Final Judgment on December 21, 2007
(DE 118). Plaintiffs/Appellants also appeal the District Court's Order Awarding Attorneys' Fees
(DE 121) on January 2, 2008.

This Amended Notice of Appeal is filed for two reasons: 1) in an abundance of caution,
in the event that the Third Circuit Court of Appeals rules that the decision of the District Court
became final only upon the entry of the December 21, 2007 Order (DE 118), to confirm a timely

DEVCON INTERNATIONAL CORPORATION et al. v. RELIANCE INSURANCE COMPANY et al.
DCVI/STX Civil No. 2001-201
Amended Notice of Appeal

appeal of the Final Judgment; and 2) to add to the issues to be considered on appeal the award of

attorneys' fees made by the District Court following its entry of Final Judgment.

The parties to the judgment appealed from and the names and addresses of their

respective attorneys are as follows:

Defendant Reliance Insurance Company:
    Douglas L. Capdeville, Esq.
    Law Offices of Douglas L. Capdeville
    Post Office Box 4191
    2107 Company Street, Lot #4
    Christiansted, St. Croix 00822
    videfense@viaccess.net

Defendant The Virgin Islands Insurance Insurance Guarantee Association:
    Richard H. Hunter, Esq.
    HUNTER, COLE & BENNETT
    1138 King Street, Suite 301
    Pentheny Building, 3rd Floor
    Christiansted, St. Croix 00820
    rhunter@hcbvilaw.com

Plaintiffs Devcon International Corp. and V.I. Cement & Building Products:
    James L. Hymes, III, Esq.
    No. 10 Norre Gade (P.O. Box 990)
    St. Thomas, Virgin Islands 00804-0990
    Telephone No.: (340) 776-3470
    Facsimile No.: (340) 775-3300
    E-Mail: hymesandzebedee@yahoo.
    raunastevenson@surfvi.com

Appellate counsel for Plaintiffs:
    Jack J. Aiello
    Florida Bar No. 440566
    GUNSTER, YOAKLEY & STEWART, P.A.
    777 South Flagler Drive
    Suite 500 East
    West Palm Beach, FL 33401
    Telephone: (561) 650-0716
    Facsimile: (561) 655-5677
    jaiello@gunster.com

[END OF TEXT]

WPB 970897.1

2

DEVCON INTERNATIONAL CORPORATION et al. v. RELIANCE INSURANCE COMPANY et al.
DCVI/STX Civil No. 2001-201
Amended Notice of Appeal

DATED January 22, 2008.                  LAW OFFICES OF JAMES L. HYMES, III, P.C.
                                         Attorney for Plaintiffs


                                    By: _____ s/ James L. Hymes, III _____
                                         JAMES L. HYMES, III
                                         No. 10 Norre Gade (P.O. Box 990)
                                         St. Thomas, Virgin Islands 00804-0990
                                         Telephone No.: (340) 776-3470
                                         Facsimile No.: (340) 775-3300
                                         E-Mail: hymesandzebedee@yahoo.com
                                                 raunastevenson@surfvi.com


### CERTIFICATE OF SERVICE

I hereby certify that on this the 22nd day of January, 2008, I electronically filed the foregoing *"Amended Notice of Appeal"* with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Douglas L. Capdeville, Esq.
Law Offices of Douglas L. Capdeville
Post Office Box 4191
2107 Company Street, Lot #4
Christiansted, St. Croix 00822
videfense@capdevillelaw.com; office@capdevillelaw.com

Richard H. Hunter, Esq.
HUNTER, COLE & BENNETT
1138 King Street, Suite 301
Pentheny Building, 3rd Floor
Christiansted, St. Croix 00820
rhunter@hcbvilaw.com; lavala@hcbvilaw.com; huntercolebennett@gmail.com


                              _____ s/ James L. Hymes, III _____
                                         JAMES L. HYMES, III
                                         LAW OFFICES OF JAMES L. HYMES, III, P.C.
                                         Attorney for Plaintiffs


WPB 970897.1                              3